Isaac C. NORMAN, Appellant,

v.

NICHIRO GYOGYO KAISHA, LTD.
and Nichiro Pacific, Ltd.,
Appellees.

No. S–1968.

Supreme Court of Alaska.

Sept. 16, 1988.
Rehearing Denied Nov. 1, 1988.

James D. Rhodes, Brett von Gemmingen, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellant.

John S. Hedland, Hedland, Fleischer, Friedman, Brennan & Cooke, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Justice.

In 1982, this court affirmed a judgment entered against Isaac C. Norman on the ground that a shareholder could not maintain an action for loss of the value of stock for breach of a shareholders agreement. *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 645 P.2d 191 (Alaska 1982). Four years later, this court reversed itself and allowed a different shareholder to pursue identical claims against the same defendants arising from the same transactions and shareholders agreement. *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 713 P.2d 1197 (Alaska 1986). This appeal presents the question of wheth-

er under these circumstances the superior court abused its discretion in denying Norman relief from the original judgment under Civil Rule 60(b)(6).

FACTS AND PROCEEDINGS.[1]

Isaac Norman was a civilian employee of the United States Navy at Adak, Alaska, for eight years. In 1972 he was the successful bidder on a five-year lease from the Navy on certain lands and buildings on Finger Bay, Adak, where he planned to establish a land-based fish processing plant. Norman formed Adak Aleutian Processors, Inc. (AAP), an Alaskan corporation, in November 1972. He then transferred his lease to the corporation, of which he was the sole stockholder.

In June 1973, Norman entered into a business arrangement with several other corporations. The parties entered into three agreements. The first agreement involved the sale of AAP stock to Market Place, a Hawaiian fishing corporation, Alaska Foods, Inc. (AFI), a Washington fish-trading corporation, and Nichiro Gyogyo Kaisha, Ltd. (NGK), a Japanese corporation involved in the fishing industry. The second agreement, between AAP and Norman, provided for Norman's employment with AAP if he terminated his Navy employment. The third agreement was the "shareholders agreement," executed by all AAP shareholders. It provided a general plan of operation and administration for AAP, and for a loan to AAP from AFI and NGK to construct a plant and begin operations.

Norman resigned from the Navy and went to work full-time for AAP. The processing plant was completed in November 1973 and operations began in the middle of the 1973–74 season. The plant was not successful. Construction costs were $2.5 million more than anticipated. The late start in 1973–74, personnel problems and alleged mismanagement by NGK made the venture unprofitable. In August 1974, AAP, under the management of NGK, terminated Norman's employment. NGK then suddenly withdrew completely from the venture.

In April 1975, Norman sued NGK to recover the $120,000 still owed to him under the stock purchase agreement. NGK counterclaimed, alleging Securities Act violations, and filed third party complaints against AFI and Market Place for their pro rata share of any money owing under the stock purchase agreement. In August 1977, Norman amended his complaint to add Counts II through IX.[2] Counts II through VI(a) and IX are based on alleged breaches of the shareholders agreement; Counts VI(b) through IX are tort claims.

This court upheld summary judgment in favor of NGK dismissing Counts II through VI(a) and IX on the ground that Norman could not maintain an individual action against NGK and NPL for breach of the shareholders agreement. *Norman*, 645 P.2d at 194–97. Counts VI(b) through IX had been dismissed by the superior court as barred by the statute of limitations. *Id.* at 197–99. This left Norman with only Count I for recovery of the balance due under the stock purchase agreement. The superior court subsequently entered judgment against Norman for costs and attorney's fees of $90,775.66, plus interest. This judgment has not been executed upon or appealed, and Count I remains pending.

In *Hikita*, AFI sued NGK and NPL for breach of the same shareholders agreement at issue in the instant case, based on the same facts. We specifically overruled *Norman* on the issue of an individual shareholder's right to maintain an independent action for breach of the shareholders agreement, holding:

> We are now of the view that in *Norman* the general rule was misapplied, and thus conclude that it is necessary to overrule a portion of that decision. We now hold that a shareholder can sue for breach of contract to which he is a party,

---

1. For a more complete recitation of the factual background of this litigation, see *Norman*, 645

2. Norman also added Nichiro Pacific, Ltd. (NPL) to his complaint. NPL is a Washington corporation affiliated with NGK.

even if he has not suffered an injury separate and distinct from that suffered by other shareholders.

713 P.2d at 1200. Subsequently, Norman moved pursuant to Rule 60(b) on the basis of *Hikita* to vacate the summary judgment which was entered against him in favor of NGK on Counts II through VI(a) and Count IX (alleged breaches of the shareholders agreement). The superior court denied the motion without a written opinion. This appeal followed.

## RELIEF UNDER RULE 60(b)(6).

Civil Rule 60(b)(6) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(6) any other reason justifying relief from the operation of the judgment.[3]

This clause of Rule 60(b) should be liberally construed to do justice where extraordinary circumstances demand it. *O'Link v. O'Link*, 632 P.2d 225, 230 (Alaska 1981). Relief under Rule 60(b)(6) is governed by equitable principles, and clause (6) is to be employed only when grounds other than those specified in the preceding clauses (1) through (5) have been demonstrated.

A change in law after a final judgment has been rendered will not ordinarily justify relief under Rule 60(b)(6) unless there are other extraordinary circumstances. *McKnight v. United States Steel Corp.*, 726 F.2d 333, 336 (7th Cir.1984); *Pierce v. Cook & Co.*, 518 F.2d 720, 723 (10th Cir. 1975), *cert. denied*, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976); *Digicourse, Inc. v. AMA Distribs.*, 113 F.R.D. 35, 36 (E.D. La.1986).

Norman argues that extraordinary circumstances are present in this case. He emphasizes that his claims arise from the same facts as *Hikita,* and argues that it is unjust that two plaintiffs who suffered similar injuries from the same wrongful acts of the same defendants should be treated differently because of an intervening change in the law. Several federal cases support this argument. These cases create what has been termed the "common accident" exception to the doctrine of finality of judgments as well as to the general rule that a subsequent change in law does not constitute an "extraordinary circumstance" for purposes of Rule 60(b)(6) determinations.

A leading "common accident" exception case is *Gondeck v. Pan American World Airways*, 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21 (1965). There two plaintiffs brought wrongful death actions against the same defendant for deaths arising from the same accident. The Fifth Circuit denied recovery to the first plaintiff under the Longshoremen's and Harbor Workers' Compensation Act; the Supreme Court denied certiorari and a petition for rehearing. *Id.* at 26, 86 S.Ct. at 154, 15 L.Ed.2d at 22–23. The Fourth Circuit subsequently upheld an award to the second plaintiff, explicitly disagreeing with the Fifth Circuit. In an unrelated case, the Supreme Court later adopted the Fourth Circuit's approach. The Court noted that its adoption of the Fourth Circuit's approach left Gondeck as the only victim who did not receive compensation from the accident, and cited "the established doctrine that 'the interest in finality of litigation must yield where the interests of justice would make unfair the strict application of our rules.' " *Id.* at 26–27, 86 S.Ct. at 154, 15 L.Ed.2d at 23 (quoting *United States v. Ohio Power Co.*, 353 U.S. 98, 99, 77 S.Ct. 652, 1 L.Ed.2d 683, 685 (1957)). Accordingly, the Court vacated its earlier denial of certiorari and reversed the judgment of the Fifth Circuit.[4]

---

**3.** "Generally, we will not disturb a superior court decision to deny a motion under Civil Rule 60(b) 'except upon a showing of an abuse of discretion, which would be the case only if we were left with the definite and firm conviction on the whole record that the judge had made a mistake.' " *Guard v. P & R Enterprises,* 631 P.2d 1068, 1071 (Alaska 1981) (quoting

*Gravel v. Alaskan Village, Inc.,* 423 P.2d 273, 277 (Alaska 1967)).

**4.** Although the *Gondeck* decision was based upon United States Supreme Court Rule 58(2) rather than Federal Rule of Civil Procedure 60(b), the same principles apply to the instant case. It should be noted that Alaska Rule of

The Tenth Circuit arrived at a similar conclusion to *Gondeck* in *Pierce v. Cook & Co.*, 518 F.2d 720, 723–24 (10th Cir.1975). In that case, two plaintiffs brought actions against the same defendant for injuries in a car/truck collision. The defendant removed one of the cases to federal court, where it won a summary judgment on the ground that a shipper was not liable for the torts of its independent contractor under Oklahoma law. The other plaintiff pursued his case in state court in Oklahoma and succeeded in persuading the Oklahoma Supreme Court to reverse itself on the issue of the shipper's liability. As a result, the second plaintiff obtained a favorable settlement while the first plaintiff was faced with an unfavorable judgment, affirmed by the Tenth Circuit, based on a rule of law no longer applicable.

The Tenth Circuit Court of Appeals granted the first plaintiff's motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6). The court based its decision on two grounds. First, following *Gondeck,* the court found it unjust that two plaintiffs injured in the same accident received "substantially different treatment" by the two courts. *Id.* at 723. Second, the court found it unfair that the plaintiff had been forced into federal court when it would have received the correct disposition in state court. Citing *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 74–75, 58 S.Ct. 817, 820–21, 82 L.Ed. 1188, 1192 (1938), the court stated, "In diversity jurisdiction cases the results in federal court should be substantially the same as those in state court litigation arising out of the same transaction or occurrence." *Pierce,* 518 F.2d at 723. *See also First Am. Nat'l Bank of Nashville v. Bonded Elevator, Inc.,* 111 F.R.D. 74 (W.D.Ky. 1986) (following *Pierce* ).

Though the outcome determination principle mandated by *Erie v. Tompkins* does not apply to the instant case, it appears that the Tenth Circuit in *Pierce* placed more weight on the "same accident" justification, which applies directly to this case. In a more recent case approving its holding in *Pierce,* the Tenth Circuit cited only the "same accident" explanation and not the *Erie* rationale. *Morris v. Adams–Millis Corp.,* 758 F.2d 1352, 1359 (10th Cir.1985).[5]

Legal commentators have favored the "common accident" rationale for relief from judgment under Rule 60(b)(6).

[T]he common accident distinction draws strength from a fundamental premise of judicial authority. The appearance of injustice, as opposed to actual unfairness, undermines public faith in the legal system and sours the acceptability of a court's decision to the parties concerned. The apparent injustice of arbitrary inconsistency of result seems more poignant when the parties' claims arise from the same accident and raise identical issues than when the claims are merely similar. This threat to judicial authority tends to justify the application of the same legal rules to all identical claims arising from the same occurrence, even though similar unrelated claims, by mere chance, might receive inconsistent treatment.

The *Pierce* common accident limitation finds further support in a related cardinal precept of American law: fairness ordinarily demands that courts seek consistent results to identical claims, since a failure to achieve consistency impairs the impartiality of legal processes.

Recent Development, *Pierce v. Cook & Co.: Rule 60(b)(6) Relief from Judgment for Change of State Law in a Diversity Case,* 62 Va.L.Rev. 414, 429 (1976).

At least one commentator has argued that there is less basis for treating a judgment as final when there are other plaintiffs adjudicating similar claims arising from the same incident.

The split litigation in *Pierce* may have given rise to a sense of nonfinality until

---

Civil Procedure 60(b) is identical to the federal rule. We additionally note that unlike *Gondeck* the instant case does not involve consideration of the court's supervisory powers in the context of conflicting circuit court decisions.

5. Thus we reject NGK's contention that the common accident exception is limited to cases in which its application is compelled by the outcome determination principles of *Erie.*

all adjudication arising from the accident had been consummated. When perceptions of finality are still tentative, setting aside a judgment rendered early in the course of multiple-action litigation on the basis of later determinations may be considered not to encroach severely upon the interest in finality of judgments.

Comment, *Pierce v. Cook & Co.: Change in State Law as a Ground for Relief from a Federal Judgment,* 124 U.Pa.L.Rev. 843, 861 (1976).[6]

■ Given the foregoing authorities, we conclude that when two litigants are injured in the same "accident" and only one recovers because an erroneous rule of law was applied to the other's case, a compelling case is presented for divergence from strict application of the finality of judgment doctrine. In reaching the conclusion that Norman is entitled to relief from judgment under Rule 60(b)(6) we balance the interest in the finality of judgments against the interest in granting relief from judgment when justice so requires. Additionally, in deciding Rule 60(b)(6) motions we give consideration to the following factors: the prejudice, if any, to the non-moving party if relief from judgment is granted, whether any intervening equities make the granting of relief inappropriate, and any other circumstances relevant to consideration of the equities of the case.

■ The appearance of injustice, and the consequent undermining of public confidence in the judicial system, is significant in the instant case, since Hikita received dramatically different treatment from Norman under identical circumstances. This apparent injustice justifies relieving Norman of the burden placed upon him by our previous decision in his case. Here the interest in finality of judgments does not weigh as heavily against the interests of justice as it might in other cases. Norman still has a claim pending against NGK on Count I of his complaint, and Alaska Foods, Inc. still has claims pending against NGK on the alleged breach of the shareholders agreement. NGK has had to prepare to defend the same issues even with Norman's breach of the shareholders agreement claims dismissed. Given the foregoing, the interest in finality of litigation in this case is of lesser significance because of NGK's continuing need to prepare a defense against a similarly situated plaintiff raising similar claims stemming from the same acts. Thus, NGK is not substantially prejudiced by allowing Norman to reopen litigation of these claims. By comparison, the interest of justice in vacating the prior judgment entered against Norman is significantly weightier.

■ Our holding today is narrow. It is focused on the particular facts of this case; where two plaintiffs have suffered similar injuries as a result of the same acts committed by the same defendants, but have been treated differently because of an intervening change in the law, it is an abuse of discretion to deny relief under Civil Rule 60(b)(6).

We therefore REVERSE the superior court's denial of Norman's motion to vacate judgment and REMAND for further proceedings.[7]

---

6. Two other federal cases offer further support for this view. In *Overbee v. Van Waters & Rogers,* 765 F.2d 578 (6th Cir.1985), the state supreme court reversed itself while there was a motion pending for a new trial on different grounds in the case in federal court. The court of appeals held that the motion for a new trial suspended the finality of the judgment, and that 60(b)(6) relief was therefore appropriate. *Id.* at 580. In *Tarkington v. United States Lines Co.,* 222 F.2d 358, 359–60 (2d Cir.1955), a change in the law and a 60(b) motion both came within the time for appeal, and the court of appeals reversed for a new trial.

7. Because of our disposition of this case under Rule 60(b)(6), we do not address Norman's arguments based upon Rule 60(b)(5).