**Glenn OLIVER, Individually and as Representative of the class of Other-at-Large Shareholders in Alaska Native Regional Corporations and Village Corporations, Plaintiff-Appellant,**

v.

**SEALASKA CORP.; Cook Inlet Region, Inc.; Nana Corporation; Koniag, Inc.; Doyon, Ltd.; Chugach Alaska Corp.; Calista Corp.; Bristol Bay Native Corporation; Bering Straits Native Corp.; Arctic Slope Regional Corp.; The Aleut Corp.; Ahtna, Inc., Defendants-Appellees,**

and

**Ronald G. Brown, Trustee.**

No. 97–36091.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 3, 1999.

Decided Sept. 3, 1999.

---

Theodore Millan (Argued) and James E. Beecher (On the Briefs), Hackett, Beecher & Hart, Seattle, Washington; and Earl M. Sutherland (On the Briefs), Reed McClure, Seattle, Washington, for the plaintiff-appellant.

David C. Crosby, Wickwire, Greene, Crosby, Brewer & Seward, Juneau, Alaska, for the defendants-appellees.

Before: HUG, Chief Judge, TROTT and TASHIMA, Circuit Judges.

TROTT, Circuit Judge:

Plaintiff Glenn Oliver appeals the district court's dismissal of Oliver's action to enforce revenue-sharing requirements of the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601–1629f (Supp. III 1997) ("ANCSA" or "the Act"). Oliver sued the twelve Regional Corporations in the Superior Court of Alaska under Alaska Statutes § 10.06.015 (Michie 1989) on behalf of himself and a putative class of shareholders, seeking declaratory judgment, an accounting, and a resulting trust. The action was removed to the district court for the District of Alaska, and the first-served defendant corporation, later joined by nine other defendants, moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed without prejudice, holding that ANCSA § 7(i) & (j), 43 U.S.C. § 1606(i) & (j), did not create an independent cause of action, and that Oliver's direct action was not cognizable under § 10.06.015. We have jurisdiction under 28 U.S.C. § 1291 (1994), and we affirm.

**I**

Enacted in 1971, ANCSA granted Alaskan Natives approximately 44 million acres of land and $1 billion in exchange for the extinguishment of aboriginal title to land in Alaska. The Act created twelve Regional Corporations, organized under Alaska Law, to take title to most of the land and all of the money. The Act also creat-

ed more than 200 "Village Corporations," each within one region, which took title to 22 million acres of surface estate. All of the stock in the Regional and Village corporations is owned by the approximately 70,000 Alaska Natives; residents of a given Village own stock in that Village Corporation and in the corresponding Regional Corporation, while Natives like Oliver who do not reside in a Village own at-large shares of their Regional Corporation. Through inheritance, Oliver owns shares in two Regional Corporations.

Because of the disparity in natural wealth among the twelve regions, § 7(i) provides for revenue sharing:

> Seventy per centum of all revenues received by each Regional Corporation from the timber resources and subsurface estate patented to it pursuant to this chapter shall be divided annually by the Regional Corporations among all twelve Regional Corporations organized pursuant to this section according to the number of Natives enrolled in each region pursuant to section 1604 of this title. . . .

In turn, § 7(j) of the Act requires each Regional Corporation to distribute 50 percent of its shared revenues to its Village Corporations and at-large shareholders.

The vague language through which ANCSA mandated revenue sharing resulted in litigation over what qualifies as "revenues" to be shared. In May 1983, with the help of a special master appointed by the district court, the twelve Regional Corporations entered into a settlement (the " § 7(i) settlement") regarding the revenue-sharing provision, and in June 1983, the district court for the District of Alaska approved the § 7(i) settlement. (*Aleut Corp. v. Arctic Slope Regional Corp.;* No. A75–0053–CV (D. Alaska June 3, 1983)).

## II

Oliver contends in this suit that the § 7(i) settlement improperly deprives him, other at-large shareholders, and the Vil-

lage Corporations of monies due to them from revenue sharing under ANCSA. Oliver argues that the corporations in which he holds stock, Cook Inlet Region, Inc. ("CIRI") and Sealaska Corp., committed an ultra vires act by contracting away their rights under § 7(i), and, because Oliver is one of the shareholders entitled by § 7(j) to 50 percent of the shared revenues, he claims to be deprived of money to which he is entitled. Specifically, Oliver alleges that due to the settlement agreement, future income of the Arctic Slope Regional Corp. will not be fully shared as ANCSA requires.

The district court held that no provision of ANCSA or Alaska corporation law provides Oliver with a direct cause of action to contest the settlement agreement. The court then permitted Oliver to amend his complaint to allege a derivative action against CIRI and Sealaska, the corporations in which he is a shareholder. When Oliver refused to amend his complaint, the district court dismissed without prejudice.

## III

We review de novo the district court's dismissal of Oliver's complaint for failure to state a claim on which relief can be granted. *See Steckman v. Hart Brewing Inc.,* 143 F.3d 1293, 1295 (9th Cir. 1998). Limiting our review to the contents of the complaint, we affirm if Oliver can prove no set of facts in support of his claim which would entitle him to relief. *See Tyler v. Cisneros,* 136 F.3d 603, 607 (9th Cir.1998).

## IV

We first consider Oliver's attempt to sue under ANCSA § 7(i). Because nothing in the text of the revenue-sharing provision creates an express private right of action to enforce the section's mandates, Oliver must establish that an implied private right of action exists. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 562, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

" '[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'" *Id.* at 568, 99 S.Ct. 2479 (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).

 Whether to imply a private right of action is a matter of statutory construction, *id.* at 568, 99 S.Ct. 2479, which requires us to consider four factors:

First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (citations and internal quotations omitted); *Crow Tribe of Indians v. Campbell Farming Corp.*, 31 F.3d 768, 769 (9th Cir.1994). If the first two factors do not support implying a private right of action, our inquiry ends. *Touche Ross & Co.*, 442 U.S. at 575–76, 99 S.Ct. 2479; *see Crow Tribe*, 31 F.3d at 770 (rejecting a sought implied right of action when the first two factors did not support the claim).

We accept the district court's excellent analysis of the *Cort* factors in this case. The first *Cort* factor—whether ANCSA creates a federal right in favor of Oliver—supports Oliver's claim of an implied private right of action. Section 7(j) requires Sealaska and CIRI to distribute 50 percent of the shared revenues under § 7(i) to shareholders like Oliver. The revenue-sharing and 50–percent–distribution requirements have the direct effect of pro-

viding dividends from the exploitation of natural resources to individual native shareholders. Oliver is a party for whose especial benefit § 7(i) & (j) was enacted. *See Crow Tribe*, 31 F.3d at 770 (noting that the explicit reference to individual Indians in the statutory section at issue suggested that the statute was enacted for the benefit of the individuals).

The second *Cort* factor—whether any indication exists of legislative intent to create or deny a private right of action under § 7(i) & (j)—does not support Oliver's position. The only textual indications in the Act are to the contrary: ANCSA's policy statement dictates that "the [Native Claims Settlement] should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation," 43 U.S.C. § 1601(b), and the only limitation period specified in the Act relates to potential suits by the State of Alaska against the United States, *id.* § 1609. When enacting ANCSA, Congress contemplated litigation, but did not provide for a private right of action to enforce § 7(i) & (j).

Because application of the first two *Cort* factors produces conflicting answers, we must address the third and fourth factors. *See Touche Ross & Co.*, 442 U.S. at 575, 99 S.Ct. 2479. The third factor—whether a private right of action is consistent with the underlying purposes of the legislative scheme—does not support Oliver's position. Because, under § 7(j), Oliver and his fellow shareholders receive 50 percent of the revenues due to Sealaska and CIRI from the § 7(i) revenue sharing, financial benefit to Oliver follows from financial benefit to the corporations. CIRI and Sealaska have an identity of interest with Oliver. By protecting their rights, the individual Regional Corporations likewise protect the rights of their shareholders. Moreover, we again consider the stated policy of avoiding litigation from 43 U.S.C. § 1601(b) as compelling evidence that ANCSA's general legislative scheme opposes individual rights of action.

Fourth, Oliver's claim is one traditionally relegated to state law. As a shareholder, he has an opportunity, under Alaska law, to bring a derivative action on behalf of CIRI and Sealaska to remedy wrongs done to the corporation. *See Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1327 (Alaska 1997) (discussing the availability of a derivative action to remedy wrongs to a corporation). Furthermore, ANCSA mandates that the twelve Regional Corporations be organized "under the laws of Alaska," 43 U.S.C. § 1606(d), underscoring the relevance of this fourth *Cort* factor in the instant case. Implying a private right of action under § 7(i) would usurp the state's traditional authority in the realm of corporation law.

We hold that the *Cort* factors do not support implying a right of action in this case. Because no express right of action exists, Oliver and his purported class may not sue the twelve Regional Corporations under federal law to enforce the revenue sharing provisions of § 7(i) & (j).

## V

We now address Oliver's attempt to bring a direct suit against the twelve Regional Corporations under Alaska Statutes § 10.06.015. We agree with the district court and the defendant corporations that no Alaska-law basis exists for Oliver's suit.

## A

### Direct Action Against Sealaska and CIRI

The Alaska Supreme Court permits a direct suit against a corporation in which a plaintiff owns stock under limited circumstances. *Hanson*, 939 P.2d at 1326–27. In *Hanson*, the plaintiffs alleged that the defendant corporation made discriminatory dividend distributions to a group of shareholders. *Id.* at 1322. The Alaska Supreme Court noted that, under Alaska law, the non-fiduciary shareholders were not liable to refund the improper dividends unless the plaintiff could establish the

shareholders' knowledge, at the time of the payments, that the payments were unlawful. *Id.* at 1327. Furthermore, the *Hanson* plaintiffs did not allege a harm to the corporation as a result of the discriminatory distributions. *Id.* Therefore, the only practical relief was in a direct action against the corporation itself. *Id.* at 1327, 1329.

In *Hanson*, the unavailability of any relief to the plaintiff was central to the court's holding. *Id.* at 1327. In the case at bench, by contrast, a derivative suit on behalf of Sealaska and CIRI, the corporations in which Oliver owns shares, would provide an adequate remedy. Under the ANCSA revenue-sharing scheme, Oliver and his fellow shareholders are cumulatively entitled to 50 percent of the shared revenues received by CIRI and Sealaska, while the remaining 50 percent is an asset of the corporations. *See* 43 U.S.C. § 1606(j). Loss to Oliver coincides with a loss to one or both of his corporations. Oliver's claim thus reduces to this: in the § 7(i) settlement, Sealaska and CIRI wrongfully contracted away their rights to receive revenues under § 7(i)—precisely the type of claim that a derivative action was meant to address. *See Hanson*, 939 P.2d at 1327 ("[W]hen a wrong has been done to the corporation, the shareholder's right to sue the directors or wrongdoers for redress is derivative and not primary." (internal quotations omitted)); Alaska Rule of Civil Procedure 23.1(a) (permitting a derivative suit on behalf of a corporation to procure a judgment in favor of the corporation).

Even if Oliver's claim were one which the Alaska Supreme Court might recognize as fitting within the *Hanson* exception, *Hanson* couched the availability of a direct action in terms of the trial court's discretion. 939 P.2d at 1328. The district court in the case at bench understood that it had discretion if the *Hanson* exception applied and specifically declined to exercise its discretion in light of the availability

of a derivative suit. No abuse of discretion occurred in this case.

## B

### Direct Action Against the Ten Other Regional Corporations

 Although a direct action by a shareholder against defendant corporations that deal with the shareholder's corporation cannot generally be maintained, two exceptions exist: (1) if the plaintiff "suffered an injury separate and distinct from that suffered by other shareholders"; or (2) if "there is a special duty, such as a contractual duty, between the alleged wrongdoer" and the plaintiff. *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 713 P.2d 1197, 1199 (Alaska 1986).

Oliver does not allege a separate and distinct injury entitling him to sue directly. Moreover, his attempt to bring a class action implies that any injury he suffered is common to all Sealaska and CIRI shareholders. *See* Alaska Rule of Civil Procedure 23(a) (requiring commonality and typicality between the claims and questions of law or fact as a prerequisite to maintaining a class action). Likewise, Oliver fails to allege any special duty owed to him by any of the other ten Regional Corporations. Neither *Hikita* exception to the derivative suit requirement against corporations in which Oliver does not own shares is implicated in this case.

## C

### Statute of Limitation

Although we affirm the district court's complete analysis regarding the unavailability of a direct cause of action for Oliver, we also note the applicable statute of limitation for a direct suit against Sealaska and CIRI. "The relationship between a corporation and its shareholders is primarily contractual," and the six-year statute of limitation for contracts actions governs. *Hanson*, 939 P.2d at 1324 (citing Alaska Statutes § 09.10.050 & *Trustees of*

*Dartmouth College v. Woodward*, 17 U.S. (4 Wheat) 518, 4 L.Ed. 629 (1819)). The § 7(i) settlement was approved by the district court for the District of Alaska on June 3, 1983, and Oliver filed the instant action on September 12, 1996—more than thirteen years later. Although Oliver correctly argues that *Hanson* set the time of accrual for statute of limitation purposes at the time of an illegal action by the corporation, 939 P.2d at 1325, we reject his application of this rule to the instant fact pattern. Because the § 7(i) settlement provided for all subsequent yearly revenue distributions, any right of action to challenge the § 7(i) settlement accrued at the time of the supposedly illegal act—when the settlement was made.

## VI

Because no private right of action exists under ANCSA § 7(i) & (j), and Alaska corporation law does not permit Oliver to bring a direct action against the twelve Regional Corporations to contest the § 7(i) settlement, Oliver's complaint in this case does not state a claim on which relief can be granted.

AFFIRMED.