Julie A. (Gough) JUELFS, Appellant,

v.

Stephen J. GOUGH, Appellee.

No. S–9931.

Supreme Court of Alaska.

Feb. 15, 2002.

Rehearing Denied March 13, 2002.

Julie A. Juelfs, pro se, North Pole.

Cory R. Borgeson, Borgeson & Burns, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Arguing that "a pet is not just a thing but occupies a special place somewhere in between a person and a piece of personal property,"[1] Julie A. Juelfs (formerly Goug) appeals a superior court ruling modifying her and her former husband Stephen J. Gough's dissolution agreement to grant sole custody of their dog Coho to Stephen. Julie also appeals the court's ruling denying her a change of judge and requests that Stephen's retirement benefits as well as attorney's fees be awarded to her. Because the decision to modify the dissolution agreement to award Stephen full custody of Coho was within the superior court's discretion, the decision to deny the motion for a change of judge was not in error, and Julie's requests for the retirement account and attorney's fees are unwarranted, we affirm the superior court decision in all respects.

## II. FACTS AND PROCEEDINGS

On January 11, 1993, Superior Court Judge Ralph R. Beistline signed a decree of dissolution between Stephen J. Gough and Julie A. Gough. The matter had first been assigned to Judge Beistline on November 23, 1992. The decree provided for shared ownership of Stephen and Julie's dog Coho, a chocolate Labrador retriever. The agreement also provided that Stephen would retain $8,253 paid into Stephen's retirement account during the marriage as well as the interest on that amount.

On March 28, 2000, Julie filed a motion requesting the dissolution agreement be re-

---

1. *Morgan v. Kroupa,* 167 Vt. 99, 702 A.2d 630, 633 (1997).

viewed due to Stephen's alleged failure to allow Julie her allotted time with Coho. Stephen opposed the motion, alleging that two other dogs at Julie's residence threatened Coho's life. Furthermore, he alleged that, during one incident when the dogs were fighting, Julie's boyfriend separated the dogs by pulling Coho's leg, thus dislocating it at the elbow requiring Coho to be under "constant care and medication." In her reply, Julie additionally argued that, because she did not request part of Stephen's retirement fund as a part of the dissolution agreement, she should now be awarded the $8,253 that accrued in it during the marriage and that the interest earned on it be "consideration" for her portion of medical bills Stephen paid on Coho's behalf.[2]

Judge Beistline issued his decision in the matter on April 20, 2000. In it, he awarded "legal and physical custody of Coho" to Stephen and allowed Julie "reasonable visitation rights as determined by" Stephen. The order also stated that Stephen would be responsible for all of Coho's medical bills.

Julie moved to review the order on May 22, 2000, claiming Stephen was not providing her with reasonable visitation. Stephen opposed the motion, arguing it was untimely and promising to provide the requisite visitation. Judge Beistline denied the motion, stating that the motion was both untimely and failed on its merits.

In September 2000, the parties sought reciprocal restraining orders against each other as the result of an altercation between them that occurred when Stephen sought to regain custody of Coho after Julie had taken the dog for a visit without Stephen's permission. Julie then filed a request for a hearing to review the custody settlement. On September 19, 2000, Judge Beistline ruled that although the court had remained hopeful that "some type of visitation could still occur between Ms. Gough and Coho" it has not worked. Therefore, the court found that Julie and Stephen should no longer have any contact whatsoever. The court also reaffirmed its previous ruling granting custody of

Coho to Stephen stating, "Ms. Gough has no rights whatsoever to Coho and may not demand visitation or take the dog from Mr. Gough." The court then imposed a six-month restraining order prohibiting the parties from contacting each other except through counsel.

Julie filed a change of judge request form in September 2000. This request was denied as the "[c]ourt ha[d] already rendered its decision in the matter" making it "too late to change Judge."

In October 2000, Julie moved for a change in custody of Coho, requesting physical custody of Coho on weekends from Saturday at eight o'clock a.m. until Sunday at eight o'clock p.m. At the same time Julie also filed a request for reconsideration of her request for a change of judge. Judge Beistline responded to Julie's request as well as other concerns regarding Coho's custody on October 23, 2000. In his order he stated that it

> is inappropriate [to] wait until after a judge makes a ruling to determine whether or not he or she likes the judge. Nevertheless, in an abundance of caution, the Court will refer this matter to another Superior Court judge to review the issue of whether another judge should be appointed to hear this matter.

Judge Beistline also reaffirmed his previous ruling that Stephen had full physical and legal custody of Coho and that he did not need to consult Julie prior to making any medical decisions.

The matter was then assigned to Superior Court Judge Charles R. Pengilly for review. Judge Pengilly found Julie's request for a new judge "properly rejected ... as untimely" and that it was "apparent that Ms. Juelfs is simply unhappy with the outcome, which does not and cannot justify disqualification of the judge who decided the case."

Julie now appeals.

### III. STANDARDS OF REVIEW

▮ "We will not disturb a trial court's ruling on a Rule 60(b) motion unless an

---

2. Julie, however, disputes that she owes this money, having never been consulted regarding

any of Coho's treatment paid for by Stephen.

abuse of discretion is demonstrated."[3] An abuse of discretion occurs when we are " 'left with the definite and firm conviction on the whole record that the judge had made a mistake....' "[4]

██ Only where a judge's refusal to disqualify himself or herself is patently unreasonable will we reverse.[5]

## IV. DISCUSSION

### A. The Trial Court Did Not Abuse its Discretion in Modifying the Property Settlement.

Julie contends that Judge Beistline abused his discretion in modifying the property settlement. Stephen responds that Julie has failed to adequately brief the issue and that the court properly modified the settlement.

### 1. Julie has sufficiently briefed the issue.

██ Stephen contends that, although Julie contests Judge Beistline's authority to modify the property settlement in her points of appeal, she fails to make the argument in her brief, thereby waiving the issue.

██ Although cursory briefing of an issue is a sufficient reason to disregard a point on appeal, regardless of a party's *pro se* status,[6]

Julie's briefing is adequate. She contests the superior court's ability to modify the property settlement. Although she does not explicitly make this argument, she does so implicitly and in a manner that we can easily review. Stephen accurately perceives her argument and responds to it. Accordingly, he is not prejudiced.[7] In these circumstances, we decline to find that the issue is waived on the basis of cursory briefing.

### 2. Property settlements incorporated into divorce decrees are final judgments.

██ The custody of Coho is a part of the property settlement agreed upon between the parties and incorporated into the divorce decree. This fact, overlooked by both parties, is important because "[a] property division incorporated within a divorce decree is a final judgment and is modifiable to the same extent as any equitable decree of the court."[8] Thus, the judgment that custody of Coho would be shared is final and can only be modified under Alaska Rule of Civil Procedure 60(b).[9]

### 3. Rule 60(b)[10]

Upon hearing Julie's motion to enforce the property settlement as to Coho, Judge Beist-

---

**3.** *Morris v. Morris*, 908 P.2d 425, 427 (Alaska 1995).

**4.** *Farrell v. Dome Labs.*, 650 P.2d 380, 384 (Alaska 1982) (quoting *Gravel v. Alaskan Village, Inc.*, 423 P.2d 273, 277 (Alaska 1967) (footnote omitted)).

**5.** *Long v. Long*, 816 P.2d 145, 156 (Alaska 1991).

**6.** *A.H. v. W.P.*, 896 P.2d 240, 243 (Alaska 1995).

**7.** *See Wilkerson v. State, Dep't of Health and Soc. Servs., Div. of Family and Youth*, 993 P.2d 1018, 1022 (Alaska 1999) (allowing cursory argumentation where argument's "essence" was easily discerned from the briefs).

**8.** *O'Link v. O'Link*, 632 P.2d 225, 228 (Alaska 1981).

**9.** *Lowe v. Lowe*, 817 P.2d 453, 456 (Alaska 1991) (noting that although AS 25.24.160(a) allows a court to adjudicate property rights, it "does not authorize a court to dispose of assets on a piece-

meal basis where ... the parties' property rights have been purportedly adjudicated and incorporated into a final judgment." Thus, "relief may be granted only within the parameters of Civil Rule 60(b).").

**10.** Alaska R. Civ. P. 60(b) states:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

line decided that Julie and Stephen should no longer share custody of the dog. He therefore awarded custody of Coho to Stephen. Because the modification does not fall under the parameters of Civil Rule 60(b)(1)-(5),[11] we consider whether the modification could be justified under Civil Rule 60(b)(6), the "catch-all" provision.[12]

■ "A party can invoke subsection (b)(6) only if none of the other five clauses apply and 'extraordinary circumstances' exist."[13] "[I]n deciding Rule 60(b)(6) motions we give consideration to the following factors: the prejudice, if any, to the non-moving party if relief from judgment is granted, whether any intervening equities make the granting of relief inappropriate, and any other circumstances relevant to consideration of the equities of the case."[14] We thus "balance the interest in the finality of judgments against the interest in granting relief from judgment when justice so requires."[15] The last requirement of a motion under Rule 60(b) is that it be made within a "reasonable time."[16]

> (6) any other reason justifying relief from the operation of the judgment.
> The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders as defined in Civil Rule 58.1(c). A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant relief to a defendant not personally served, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis and audita querela are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

11. Rule 60(b)(1) is usually applied to cover events occurring prior to entry of the judgment and not those that post-date it. *See McGee v. McGee,* 974 P.2d 983, 989 (Alaska 1999). The events at issue here occurred after Julie and Stephen's divorce decree was entered. Therefore, Rule 60(b)(1) is inapplicable. Subsections (b)(1) through (3) are also inapplicable because there is a one-year time limitation for motions brought under them that courts do not have the power to enlarge. *See O'Link,* 632 P.2d at 229. Subsections (3) through (5) are also inapplicable

■ Unlike Rule 60(b)(3) fraud, which can be brought by the court at any time,[17] subsection (6) requires a motion be made by one of the parties. The rule states that "the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."[18] We construe Stephen's opposition to Julie's motion as such a request. In his opposition Stephen contends that the "joint sharing agreement of a dog warrants review by the Court." He goes on to state that it is "in the best interests of Coho that the property settlement agreement provide that Coho be awarded to Steve Gough solely." Such language is enough to warrant the trial court's action. Although there is an interest in the finality of judgments, it is clear the judgment would never have been final under the circumstances that faced the court. The arrangement between Julie and Stephen assumed a state of facts, namely, cooperation between them, that proved not to exist, requiring judicial intervention. As Judge Beistline aptly noted, the arrangement between Julie and Stephen was not working: "[T]he parties were unable to share custody of Coho without severe contention."

as neither party alleges facts that would bring this case under those subsections.

12. "Rule 60(b)(6) is, after all, a catch-all provision and 'should be liberally construed to enable courts to vacate judgments *whenever* such action is necessary to accomplish justice.' " *Clauson v. Clauson,* 831 P.2d 1257, 1261 (Alaska 1992) (emphasis in original) (quoting *O'Link,* 632 P.2d at 230).

13. *Lacher v. Lacher,* 993 P.2d 413, 419 (Alaska 1999) (citing *O'Link,* 632 P.2d at 229).

14. *Norman v. Nichiro Gyogyo Kaisha, Ltd.,* 761 P.2d 713, 717 (Alaska 1988).

15. *Id.*

16. *Lowe v. Lowe,* 817 P.2d 453, 459 (Alaska 1991).

17. *See, e.g., Higgins v. Municipality of Anchorage,* 810 P.2d 149, 154 (Alaska 1991) (noting "Civil Rule 60, which provides for relief from judgment, specifically authorizes a court 'to set aside a judgment for fraud upon the court.' ") (quoting Alaska R. Civ. P. 60(b)); *Livingston v. Livingston,* 572 P.2d 79 (Alaska 1977).

18. Alaska R. Civ. P. 60(b)(6).

### B. Judge Beistline Did Not Err in Denying Julie's Request for a Change of Judge.

■ Julie claims Judge Beistline committed error by failing to properly address her request for a change of judge and by not consulting Standing Master MaryAlice Closuit, the special master who presided over the original dissolution proceeding. Stephen argues in response that Julie's request was correctly denied as untimely.

"Failure to file a timely notice precludes change of judge as a matter of right. Notice of change of judge is timely if filed before the commencement of trial and within five days after notice that the case has been assigned to a specific judge." [19]

Julie filed her request for a change of judge on September 22, 2000. Judge Beistline signed the decree of dissolution of marriage in this matter on January 11, 1993. Over seven years passed after Judge Beistline's assignment before Julie requested a change of judge. Rule 42(c)(3) precludes a change of judge as a matter of right in these circumstances.[20]

Even so, Judge Beistline still referred the matter to another superior court judge for review. After review, the second judge concurred that the request was untimely. There is no basis to find Judge Beistline's decision patently unreasonable. As in *Lacher v. Lacher*, Julie's argument is "little more than an expression of [her] dissatisfaction with the superior court's ruling." [21]

### C. Julie Is Not Entitled to Money from Stephen's Retirement Account Distributed in the Original Property Settlement.

■ Julie claims that in light of the change Judge Beistline made to the original dissolution decree, she is entitled to $10,967 ($8,253 in Stephen's retirement account plus interest of $2,714) that she claims should have been awarded to her at the time of the dissolution. Julie also requests interest on this amount from January 11, 1993. Stephen argues the issue should not be considered because Julie failed to raise it before the superior court.

The money Julie requests was awarded to Stephen as a part of the property settlement and was incorporated into the dissolution decree. It is therefore a final judgment that can only be changed or modified through the use of Civil Rule 60(b).[22]

Julie did not bring a Rule 60(b) motion, either explicitly or implicitly, in the superior court. She is not entitled to raise this issue for the first time on appeal.[23]

### D. Julie Is Not Entitled to an Award of Attorney's Fees.

■ Julie requests "half the expenses paid to [Stephen's law firm] for [her] legal work in this matter." Stephen argues in response that this issue was not raised in the lower court and should therefore not be considered first by this court on appeal.

In *Alaska Federal Savings & Loan Ass'n of Juneau v. Bernhardt*,[24] we considered the question of whether *pro se* litigants were entitled to attorney's fees.[25] After considering policy reasons for and against[26] such

---

**19.** Alaska R. Civ. P. 42(c)(3).

**20.** *See, e.g., Musser v. Johnson*, 914 P.2d 1241, 1243 (Alaska 1996) (finding six-month delay between assignment and request precluded change as a matter of right).

**21.** 993 P.2d 413, 421 (Alaska 1999).

**22.** *Allen v. Allen*, 645 P.2d 774, 776 (Alaska 1982) (noting the "court has no inherent equitable power to modify property rights that are part of a final decree. Rather, the provisions of a decree adjudicating property rights are modifiable only to the extent that relief may be obtained from any other final judgment.").

**23.** *Pierce v. Pierce*, 949 P.2d 498, 501 (Alaska 1997) (holding that issue not raised in trial court was barred on appeal because of prejudice to opposing party).

**24.** 794 P.2d 579 (Alaska 1990).

**25.** *Id.* at 581–82.

**26.** Reasons against awarding *pro se* litigants fees include:

(1) the difficulty in valuing the non-attorney's time spent performing legal services, i.e., the problem of overcompensating pro se litigants for "excessive hours [spent] thrashing about on uncomplicated matters," (2) the danger of en-

awards we concluded the reasoning against allowing *pro se* litigants to recover fees was more persuasive.[27] We have recently affirmed this conclusion in *Shearer v. Mundt.*[28] Julie has provided no reason for us to depart from this approach. Accordingly, we deny Julie's request for fees.

## V. CONCLUSION

■ The superior court did not abuse its discretion in modifying the property settlement incorporated into Julie and Stephen's dissolution decree in awarding Coho to Stephen. The superior court did not err in denying Julie's untimely request for a change

of judge. Finally, Julie is not entitled to any portion of Stephen's retirement account, which was previously distributed in the original settlement, or to an award of attorney's fees. We therefore AFFIRM the superior court's ruling in all respects.[29]

BRYNER, Justice, not participating.

couraging frivolous filings by pro se litigants and creating a "cottage industry" for non-lawyers, (3) our view that the express language of Civil Rule 82 specifying "attorneys fees" is not easily susceptible to a construction allowing awards to non-attorneys, and (4) the argument that, in cases where a litigant incurs no actual fees, the award amounts to a penalty to the losing party and a windfall to the prevailing one.
*Pratt & Whitney Canada, Inc. v. Sheehan,* 852 P.2d 1173, 1181 n. 12 (Alaska 1993) (citing *Alaska Fed. Sav. & Loan Ass'n of Juneau,* 794 P.2d at 581).

**27.** *Alaska Fed. Sav. & Loan Ass'n of Juneau,* 794 P.2d at 581–82.

**28.** 36 P.3d 1196 (Alaska 2001).

**29.** Julie's last contention is that she is entitled to reversal because when she approached Stephen's counsel, he stated he would not deal with her as a *pro se* litigant. Because she made no mention of the matter in the superior court, she may not raise it now for the first time on appeal. *Pierce,* 949 P.2d at 500–01.