**ALASKA FOODS, INC., Appellant,**

v.

**NICHIRO GYOGYO KAISHA, LTD.,
and Nichiro Pacific, Ltd., Appellees.**

No. S–1933.

Supreme Court of Alaska.

Jan. 20, 1989.

---

James D. Rhodes and Brett von Gemmingen, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellant.

John S. Hedland and James T. Brennan, Hedland, Fleischer, Friedman, Brennan & Cooke, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

Alaska Foods, Inc. ("AFI" or "Alaska Foods") appeals from a summary judgment entered in favor of Nichiro Gyogyo Kaisha, Ltd. ("NGK" or "Nichiro Gyogyo") and Nichiro Pacific, Ltd. ("NPL" or "Nichiro Pacific") (collectively "Nichiro") on the grounds of res judicata.

## I. FACTS AND PROCEEDINGS.

This is the second time the instant litigation has reached this court, *see Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 713 P.2d 1197 (Alaska 1986), and the fourth time we have addressed the underlying dispute. *See Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 761 P.2d 713 (Alaska 1988); *Hikita;* and *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 645 P.2d 191 (Alaska 1982). In *Hikita,* we set forth the facts as follows:

> In 1972 Isaac Norman entered into a five-year, $1000 per year lease with the U.S. Navy for some property on Finger Bay at Adak, Alaska. Norman intended to establish a land-based fish processing facility. To carry out his intentions, he formed Adak Aleutian Processors, Inc. (AAP [or "Adak Aleutian"]), an Alaskan corporation, and transferred to it the Finger Bay lease.
>
> Norman sold 30% of the AAP stock to Alaska Foods, 30% to NGK,[1] and 10% to Market Place. Alaska Foods, a Washington corporation, was controlled by Alaska Shokai, a Japanese corporation. Appellant Takehiro Hikita and his family owned more than 90% of Alaska Shokai. NGK is a Japanese corporation and Market Place is a Hawaiian corporation. The three corporations, all of whom were engaged in various aspects of the fishing industry, agreed to pay Norman $200,000 jointly and severally for the stock purchased.[2]
>
> At the time of the stock purchase the parties also entered into a "shareholders agreement" which set out the general plan of operation and administration of AAP. The shareholders collectively agreed to "exert their best efforts to achieve the corporate and business pur-

---

**1.** In *Hikita* we treated Nichiro Gyogyo and Nichiro Pacific as a single entity. 713 P.2d at 1198 n. 1. Nichiro Gyogyo, a Japanese corporation, was party to the shareholders agreement. Nichiro Gyogyo used Nichiro Pacific, its wholly-owned American subsidiary, to transact its business in Alaska.

**2.** This footnote corresponds to footnote 3 of the original, which reads: "Norman retained 20% of the stock. The remaining 10% was previously transferred as a "finders fee" to Otani, vice-president, treasurer and manager of Market Place. Otani had arranged the initial meeting between Norman and Hikita." 713 P.2d at 1198.

poses of AAP." In addition, each of the shareholders, with the exception of Norman, incurred various specific obligations pursuant to the agreement. NGK agreed to furnish to AAP sufficient funds for the construction and installation of new improvements, equipment and facilities for the Adak operations, upon terms and conditions to be agreed upon between NGK and AAP; to provide to AAP up to $2 million in working capital; and to provide technical assistance for the construction and operation of the processing facilities.

Alaska Foods also agreed to furnish funds sufficient for the construction of the necessary facilities, upon terms to be agreed upon between Alaska Foods and AAP. It further agreed to provide the necessary personnel to undertake the general affairs and business operations of AAP. In accordance with the first obligation, Alaska Foods advanced approximately $1.6 million to AAP.

Under NGK's supervision, the plant was completed in 1973 at a cost of $3.2 million, which was $2.5 million above the original estimate. Operations began during the 1973–74 fishing season. The plant was not productive for long, however, as several days into the 1974–75 season NGK suddenly and without notice withdrew from the venture. The facility never reopened.

713 P.2d at 1198–99.

Nichiro Gyogyo's abandonment of the Adak Aleutian venture spawned at least five lawsuits. Three of them involved Adak Aleutian as a party, and two of them —the instant case and *Norman*—were brought by Adak Aleutian shareholders. *Norman* is not directly relevant to the instant case, but each of the Adak Aleutian cases is important and is therefore summarized below.

On August 15, 1975, the Bank of California filed a complaint in federal district court against Adak Aleutian and Nichiro Pacific to foreclose on loans it had made to Adak Aleutian. *Bank of California v. Adak Aleutian Processors, Inc.*, No. A75–182 Civ. (D.Alaska). Adak Aleutian cross-claimed against Nichiro Pacific, alleging that Nichiro Pacific had breached a fiduciary duty, converted assets, and breached an obligation to contribute working capital to Adak Aleutian. Adak Aleutian defaulted on the cross-claim on August 5, 1976, and the parties stipulated to a judgment of foreclosure the next day. The court entered a default judgment and decree of foreclosure on November 1, 1976. The cause of the default was Adak Aleutian's failure to provide adequate answers to interrogatories.

On June 4, 1975, Nichiro Pacific filed a complaint in superior court against Adak Aleutian for amounts owed on various promissory notes. *Nichiro Pacific, Ltd. v. Adak Aleutian Processors, Inc.*, No. 75–4074 Ci. (Alaska Super., 3d Dist., Anchorage). Adak Aleutian filed a third-party complaint against Nichiro Gyogyo and a counterclaim against Nichiro Pacific. The third-party complaint and the counterclaim made similar allegations of mismanagement, abuse, and refusal to advance funds. The superior court entered summary judgment in favor of Nichiro Pacific on its complaint in July 1976. Adak Aleutian's counterclaim and third-party complaint languished until December 1979, when the superior court granted summary judgment in favor of Nichiro Gyogyo and Nichiro Pacific. Invoking res judicata, the court implicitly ruled that the judgment in *Bank of California v. Adak Aleutian* barred Adak Aleutian's claims.

On July 9, 1975, Adak Aleutian filed a complaint in federal district court against Nichiro Gyogyo and Nichiro Pacific. *Adak Aleutian Processors, Inc. v. Nichiro Gyogyo Kaisha, Ltd.*, No. A75–153 Civ. (D.Alaska). This complaint alleged mismanagement and various breaches of obligations, similar to the allegations Adak Aleutian had made in the two previous suits. This case saw little activity, and the parties stipulated to a dismissal on May 3, 1976. Although the record does not explicitly reveal the reason for the stipulation, the timing and context strongly suggest

that Adak Aleutian simply intended to pursue its claims in the other two cases.[3]

Finally, Hikita and Alaska Foods initiated the instant litigation in superior court on October 21, 1977. In *Hikita*, we summarized the actions of the superior court as follows:

> Alaska Foods asserted both contract and tort claims. Alaska Foods' contract claims were dismissed for two reasons: First, the superior court held that *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 645 P.2d 191 (Alaska 1982) barred the contract action. Second, the superior court held that prior litigation between related parties barred the contract action under Restatement (Second) of Judgments § 56 (1980). Alaska Foods also asserted tort claims which were dismissed because of the bar of the two year statute of limitations.
>
> Hikita, individually, asserted both contract and tort claims. Hikita's contract claims were dismissed because he was neither a party to, nor an intended beneficiary of, the shareholders agreement. Relying upon the *Norman* decision, the superior court dismissed some of Hikita's tort claims. As to others, involving personal injuries, the superior court held that they were not barred by either *Norman* or the Restatement (Second) of Judgments § 56.

713 P.2d at 1199 n. 4.

We affirmed in part, reversed in part, and remanded. To summarize, we held that Alaska Foods was a proper party to maintain the action, *id.* at 1201; that section 56 of the Restatement did not bar Alaska Foods' action, *id.* at 1201–02; and that the tort claims of both Hikita and Alaska Foods were properly dismissed. *Id.* at 1201 n. 11, 1202–03. Thus, the only issue *Hikita* left open to further proceedings was Alaska Foods' claim for breach of the shareholders agreement. *Hikita* specifically allowed Nichiro to reargue the issues of res judicata and collateral estoppel. *Id.* at 1202 n. 12.

On remand, Nichiro renewed its motion for summary judgment on grounds of res judicata. The superior court granted the motion, concluding that this case raised the same issues that were raised in *Bank of California v. Adak Aleutian* and that Alaska Foods, through Hikita, had controlled that litigation. Final judgment was entered on this basis, and this appeal followed.

## II. UNDER WHAT CIRCUMSTANCES MAY ALASKA FOODS BE BOUND BY PRIOR LITIGATION TO WHICH IT WAS NOT A PARTY?

The essence of Alaska Foods' argument is that it may not be bound by the prior litigation since it was not a party to, did not control, and was not represented in either *Bank of California v. Adak Aleutian* or *Nichiro Pacific v. Adak Aleutian.* Nichiro Gyogyo and Nichiro Pacific argue that these cases have res judicata effect as to Alaska Foods since Hikita, on behalf of Alaska Foods, was "in privity" with Adak Aleutian and shared control in both cases.

■ Alaska Foods does not argue in its appellate briefs that its complaint in the instant case raises any central issues that Adak Aleutian did not plead in both of the prior cases. It is certain that such an argument would fail because the issues of Nichiro's mismanagement and wrongful abandonment were raised in all of the lawsuits that were brought. Where the operative wrong is the same, and the evidence necessary to sustain the allegations is the same, res judicata will apply. *See Astron Indus. Assocs. v. Chrysler Motors Corp.*, 405 F.2d 958, 962 (5th Cir.1968). "[A] mere change in the legal theory asserted as a ground for recovery will not avoid the preclusive effect of the judgment." *DeNardo v. State*, 740 P.2d 453, 456 (Alaska), *cert. denied,* — U.S. ——, 108 S.Ct. 277, 98 L.Ed.2d 239 (1987).

■ The fact that *Bank of California v. Adak Aleutian* ended in a default judg-

---

3. The stipulation did not specify that it was with prejudice. Therefore, it acted as a dismissal without prejudice. Fed.R.Civ.P. 41(a)(1).

ment based on a discovery violation does not prevent the judgment from having preclusive effect. Under Federal Rule of Civil Procedure 41(b), a dismissal for failure to comply with discovery has the effect of an adjudication on the merits. See *United States v. Procter & Gamble Co.*, 356 U.S. 677, 679–80 & n. 4, 78 S.Ct. 983, 984–85 & n. 4, 2 L.Ed.2d 1077, 1080 & n. 4 (1958) (failure to produce documents); *Nasser v. Isthmian Lines*, 331 F.2d 124, 127 (2d Cir. 1964) (failure to answer interrogatories).

This court has stated on numerous occasions that a prior judgment will have preclusive effect on a non-party only if the non-party was "in privity" with a party to the prior litigation. See *Blake v. Gilbert*, 702 P.2d 631, 634–35 (Alaska 1985); *Drickersen v. Drickersen*, 546 P.2d 162, 170, 171 (Alaska 1976); *Pennington v. Snow*, 471 P.2d 370, 374–76 (Alaska 1970). Therefore, Alaska Foods will be bound by the judgments in the prior cases if it was in privity with Adak Aleutian.[4]

This court has recognized that there is no unified definition of "privity," but rather that it is a shorthand way of expressing assurance that the non-party has had adequate notice and opportunity to be heard, and that its rights and interests have been protected. *Drickersen*, 546 P.2d at 170, 171 (quoting *Pennington*, 471 P.2d at 375–76). Similarly, the Restatement drops all reliance on privity, and instead relies on the various specific relationships that justify preclusion. Restatement (Second) of Judgments, Ch. 1 at 1, 13–14; §§ 34–61 (1980) [hereinafter Restatement]. Other authorities share this view. See, e.g., 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4449, at 418–19 (1981); *Montana v. United States*, 440 U.S. 147, 154 n. 5, 99 S.Ct. 970, 974 n. 5, 59 L.Ed.2d 210, 217 n. 5 (1979). We think the

Restatement provides a sound approach to the problem of determining whether privity exists, as well as an analytical framework for the resolution of the issues in this appeal.

Under section 56 of the Restatement, a judgment against a third-party beneficiary to a contract (here, Adak Aleutian) terminates the promisor's (Nichiro Pacific's) obligation to the promisee (Alaska Foods). In *Hikita*, we concluded that section 56 applies only where the prior case actually established as a matter of law that the promisor breached its obligations. And since no court had ever reached the merits of Nichiro Pacific's alleged breach of contract, section 56 was held inapplicable. 713 P.2d at 1201–02.

■ Restatement section 41 holds that a non-party is bound by the judgment in a prior case if a party to that case "represented" the non-party. The section sets forth a variety of legal relationships constituting representation, none of which apply to Adak Aleutian and Alaska Foods. Furthermore, it is clear that Alaska Foods never intended to have Adak Aleutian represent its interests because early in the dispute Alaska Foods contemplated an independent lawsuit.

■ This brings us to section 39 of the Restatement, which in the instant case was the focus of the parties' arguments in the superior court; the superior court relied on it in deciding the case. Section 39 of the Restatement provides:

A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.

---

4. It is of no consequence that Nichiro Gyogyo was not a party in *Bank of California v. Adak Aleutian*. This court abolished the requirement of mutuality in *Pennington*, 471 P.2d at 376–77. There are no "unusual or exceptional factors" in the instant case that would prohibit Nichiro Gyogyo from invoking the judgment in *Bank of California v. Adak Aleutian*. See *id.* at 377.

In *Kott v. State*, 678 P.2d 386, 391–93 (Alaska 1984), we limited the mutuality holding of *Pen-*

*nington* to civil cases. We take this occasion to disavow any indication that our abolition of the requirement of mutuality announced in *Pennington* has in any manner been modified or overruled by our subsequent decisions in *Miller v. State, Dep't of Pub. Safety*, 761 P.2d 117, 118 (Alaska 1988), and *Briggs v. State, Dep't of Pub. Safety*, 732 P.2d 1078, 1081 (Alaska 1987).

However, in our view section 39 should not be applied whenever preclusion between a corporation and a stockholder, director, or officer is involved; instead, section 59 should be applied in these cases.

This conclusion is supported by the Restatement's commentary. Comment e to section 59 compares closely held and widely held corporations, and concludes with respect to the latter that

> the directors and officers are charged with a fiduciary obligation to manage the corporation's affairs, including the conduct of litigation, in a manner consistent with the best interests of the enterprise, in disregard of their own personal interests. Their *control* of litigation on behalf of the corporation should be unfettered by concern that its outcome might be conclusive upon them in their individual capacities.

Restatement § 59 comment e, at 98 (emphasis added). This suggests that shareholders, officers, and directors of widely held corporations are not bound in their individual capacities by the results of the corporation's litigation, even if they controlled it to the extent provided in section 39. If section 59 trumps section 39 with respect to widely held corporations, it follows that the same principle should apply to closely held corporations.

Section 59 of the Restatement provides in part:

> Except as stated in this Section, a judgment in an action to which a corporation is a party has no preclusive effects on a person who is an officer, director, stockholder, or member of a non-stock corporation, nor does a judgment in an action involving a party who is an officer, director, stockholder, or member of a non-stock corporation have preclusive effects on the corporation itself.

According to the commentary, this portion of section 59 is reflective of the general rule that "[a] judgment in an action to which a corporation is a party does not in general bind or redound to the benefit of its stockholders, members, or management, except insofar as it affects the corporation itself," since "[a] corporation is for most purposes treated as a jural person distinct from its stockholders, members, directors, and officers." Restatement § 59 comment a.

However, section 59 provides an exception to this general rule in subsection (3)(a):

> (3) If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to issues determined therein as follows:
>
> (a) The judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue....

The commentary in support of subsection 3(a) states in part:

> In a corporation whose management is a complex organization ... many or all of the officers and directors often have such a remote connection with specific litigation that they cannot be said to have participated in it beyond assuming official responsibility on behalf of the corporation. To hold them bound by determinations in litigation to which the corporation is a party would in effect deny them their own day in court. The same is true of stockholders or members of such a corporation.
>
> ....
>
> When the corporation is closely held, however, interests of the corporation's management and stockholders and the corporation itself generally fully coincide. By definition, the stockholders are few in number and either themselves constitute the management or have direct personal control over it. In many respects, the enterprise is a proprietorship or partnership conducted in corporate form. If the corporate form is ignored by the corporation's proprietors the corporation may be treated as their alter ego, with the consequence that they are personally liable for the corporation's obligations. See Subsection (5) and Com-

ment *g*. When the form is adequately adhered to, the fact that interests of a closely held corporation and its proprietors are usually identical does not efface the separate legal identity of the corporation for such purposes as taxation, regulation, and the limitation of stockholders' liability to their investment in the corporation. For the purpose of affording opportunity for a day in court on issues contested in litigation, however, there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.

The problem then becomes one of fair opportunity to litigate the issue in question. When the corporation is the party to the litigation, a controlling owner who participates in the conduct of the litigation ordinarily has full opportunity and adequate incentive to litigate issues commonly affecting him and the corporation.
Restatement § 59 comment e▪

In view of the foregoing, we believe that this litigation should focus on two questions: (1) whether or not Alaska Foods actively participated in the *Bank of California v. Adak Aleutian* or *Nichiro Pacific v. Adak Aleutian* litigation on behalf of Adak Aleutian; and (2) whether the interests of Alaska Foods and Adak Aleutian in the two cases were "so different" that Alaska Foods should be given the opportunity to litigate the issues.[6]

## III. MAY ALASKA FOODS RELITIGATE ISSUES RAISED BY ADAK ALEUTIAN IN THE PRIOR CASES?

▪ Given our determination that Restatement section 59, rather than section

**6.** By its own terms, section 59 precludes only the issues decided in the prior litigation and not the entire claim of the non-party. In traditional terminology, section 59 gives rise only to "collateral estoppel" and not complete claim preclusion under res judicata. *See Murray v. Feight*, 741 P.2d 1148 at 1153 (Alaska 1987); *Drickersen*, 546 P.2d at 169 (quoting 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405, at 621 (2d ed. 1974)). The Restatement uses the term "res judicata" to cover both issue preclusion (collateral estoppel) and claim preclusion. *See* Restatement, Ch. 1, at 1, 2. Different sections have different effects. For example, while section 59 gives rise only to issue preclusion, section 41 (representation) gives rise to both issue preclusion and claim preclusion. *See* Restatement § 41 comment a, at 394 ("representation is treated as equivalent to participation by the represented person himself").

The resolution of the issues of Nichiro's contract breaches and mismanagement in the prior cases would be dispositive of Alaska Foods' claims in this case. Therefore, collateral estoppel will have the practical effect of precluding all of Alaska Foods' claims.

39, is controlling here, we conclude that the question of whether Alaska Foods may relitigate issues raised by Adak Aleutian in *Bank of California v. Adak Aleutian* and *Nichiro Pacific v. Adak Aleutian* should be remanded to the superior court for determination. As was indicated at the outset, Nichiro's motion for summary judgment was granted on the basis of res judicata. In support of its motion Nichiro, and Alaska Foods in opposition, relied almost exclusively on the provisions of section 39. These circumstances lead us to the conclusion that the superior court's judgment in favor of Nichiro should be reversed and the matter remanded for determination of whether Alaska Foods' involvement in the two cases constituted active participation for purposes of section 59(3)(a), as well as for resolution of the question of whether Alaska Foods' interests and those of Adak Aleutian are so different that Alaska Foods lacked adequate incentive to pursue Adak Aleutian's claims[7] and thus should have the opportunity to relitigate the issues.[8]

REVERSED AND REMANDED.

---

**7.** There is support in the record for the view that Alaska Foods lacked adequate incentive. At the time of the suit initiated by Bank of California, Adak Aleutian was apparently out of money. Moreover, Adak Aleutian had total judgments of over $3.5 million entered against it, which might offset anything that it could hope to recover from Nichiro. Nichiro argued in the superior court that these judgments were the most likely explanation for Adak Aleutian's decision to abandon its claims. Due to these unsatisfied judgments, Alaska Foods' stock in Adak Aleutian probably had little value. In the instant litigation, however, Alaska Foods may seek damages not only for the lost value of the stock, but also for "all proximate damages that can be proved with reasonable certainty." *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 713 P.2d 1197,

1201 (Alaska 1986). Alaska Foods alleges that Nichiro's actions caused Bank of California to foreclose on property pledged by Alaska Foods, which, "in turn led to the closing and virtual destruction of AFI." If this is true, Alaska Foods may have suffered damages substantially exceeding the lost value of its stock in Adak Aleutian.

Some of the foregoing assertions may be materially disputed, as the lack of incentive issue was not squarely addressed in the trial court. If, however, they prove to be true, a case of inadequate incentive to litigate would be made out. *See* Restatement § 59 comment e, at 99–101.

**8.** *See also* Restatement § 28(5)(c).