Takehiro HIKITA and Alaska
Foods, Inc., Appellants,

v.

NICHIRO GYOGYO KAISHA, LTD., and
Nichiro Pacific, Ltd., Appellees.

No. S–10612.

Supreme Court of Alaska.

Feb. 20, 2004.

Douglas C. Perkins, Hartig Rhodes Hoge
and Lekisch, P.C., Anchorage, for Appel-
lants.

John S. Hedland, Hedland, Brennan,
Heideman and Cooke, Anchorage, for Appel-
lees.

Before: BRYNER, Chief Justice,
MATTHEWS, EASTAUGH, and
CARPENETI, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

The superior court imposed litigation-end-
ing sanctions against Alaska Foods, Inc., and

Takehiro Hikita (collectively Alaska Foods) for failing to produce pretrial discovery. We reversed the sanctions order because the superior court did not explicitly consider lesser alternative sanctions. After considering and rejecting lesser alternatives on remand, the superior court reimposed its original sanctions order. We affirm, concluding that the superior court did not abuse its discretion.

## II. FACTS AND PROCEEDINGS

This is the fourth time this case has come before us and the seventh time we have addressed aspects of the underlying dispute.[1] Our most recent decision, *Hikita v. Nichiro Gyogyo Kaisha, Ltd.* (*Hikita II* ), described the case's lengthy procedural history, a story we need not retell here.[2] In *Hikita II* we reversed a superior court summary judgment order entered in 1991 that dismissed Alaska Foods's claims against Nichiro for several alternative reasons: on the ground of issue preclusion, for lack of substantive merit, and as a sanction for Alaska Foods's failure to provide Nichiro with timely discovery.[3]

In appealing the 1991 order, Alaska Foods challenged the superior court's use of dismissal as a discovery sanction on two separate theories. Alaska Foods argued initially that a discovery sanction was unwarranted because Alaska Foods had adequately responded to Nichiro's discovery requests.[4] Second, Alaska Foods argued that the superior court lacked authority to impose a discovery sanction because Nichiro had never moved for an order compelling discovery.[5] Our decision in *Hikita II* rejected both these arguments.[6] We nonetheless observed that "a trial court may not issue litigation-ending sanctions without first exploring 'possible and meaningful alternatives to dismissal.' "[7] Because the superior court had not explicitly considered lesser alternatives, we remanded for further consideration of this point.[8] In remanding the issue, however, we stressed that "[o]ur decision does not preclude the court from reinstating the original sanctions order if a careful consideration of lesser alternative sanctions convinces it that no sanction short of dismissal was appropriate and if the court fully explains its reasons for reaching this conclusion."[9]

On remand, after carefully considering and rejecting the possibility of imposing lesser sanctions, the superior court renewed its dismissal order:

> [M]onetary sanctions against [Alaska Foods] would be of no value in bringing about compliance with the discovery requirements. [Alaska Foods] and its primary owner, Takehiro Hikita, are already subject to judgments in favor of defendants which, at the time of the dismissal order in 1991, were in the amount of millions of dollars, and had not been paid. Mr. Hikita had been held in contempt of court for failing to appear at a court ordered judgment debtor examination. Accordingly, the imposition of additional monetary sanctions or a contempt citation against [Alaska Foods] and/or Hikita would not result in compliance with the order. Additionally, an order compelling compliance would have been of no effect. [Alaska Foods] had repeatedly ignored its obligation to make discovery, and had deliberately disregarded its own promises to do so. . . . Finally Alaska Foods' failure to provide discovery in the over nine month period since the Supreme Court's opinion of November 17, 2000 reaffirms this court's conviction that no sanction other than dismissal is sufficient.

Alaska Foods again appeals.

1. *Hikita v. Nichiro Gyogyo Kaisha, Ltd.,* 12 P.3d 1169, 1171–74 (Alaska 2000) (*Hikita II* ).

2. *Id.*

3. *Id.* at 1180.

4. *Id.* at 1175.

5. *Id.*

6. *Id.* at 1175–76.

7. *Id.* at 1176 (quoting *Underwriters at Lloyd's London v. The Narrows,* 846 P.2d 118, 119 (Alaska 1993)).

8. *Id.*

9. *Id.* at n. 21.

## III. DISCUSSION

■ The superior court has broad authority to determine appropriate sanctions for discovery violations, and its decisions in this area are "subject only to review for abuse of discretion." [10] We have nevertheless recognized that, before ordering a litigation-ending sanction, the trial court must expressly consider "possible and meaningful alternatives to dismissal." [11] We have also pointed out that a court considering this issue should be mindful that the sanction it ultimately chooses must be "sufficiently related" to the violation it seeks to punish.[12]

■ Alaska Foods accuses the superior court of disregarding these principles in several ways. It first argues that, by the time the superior court considered the issue on remand, a discovery sanction was no longer warranted because our decision in *Hikita II* made Nichiro's outstanding discovery requests superfluous. Alaska Foods posits that Nichiro's discovery requests merely sought information to support its defense that Alaska Foods's claims were barred by the doctrine of issue preclusion; because *Hikita II* found as a matter of law that issue preclusion did not bar these claims, Alaska Foods reasons that the discovery requests are now moot. In Alaska Foods's view, then, dismissal as a sanction for failure to produce this information has no substantial relation to the discovery violation allegedly committed.

But this argument relies on a mistaken premise: that "the *only* reason for propounding any of the requests ... was to find support for Nichiro's planned summary judgment motion on the issues of res judicata/collateral estoppel." Here, since the record supports Nichiro's position that its requests for discovery sought information relating to the independent issues of damages and issue preclusion, *Hikita II's* ruling on the latter issue did not make Nichiro's requests for

discovery superfluous. Moreover, in reversing the superior court's finding of res judicata/collateral estoppel, *Hikita II* relied on Nichiro's failure to show that Alaska Foods had any incentive to pursue earlier litigation resulting in a judgment against Adak Alaska Processors, Inc.—its original joint venture with Nichiro—after Nichiro abandoned the venture.[13] As Nichiro correctly points out, a response to its discovery requests might have produced information enabling Nichiro to present the record evidence of incentives that *Hikita II* specifically found to be lacking to support a finding of issue preclusion on summary judgment.

Alaska Foods also argues that Nichiro's discovery requests were superfluous—and that Alaska Foods's failure to respond to them should therefore have been excused—because the parties conducted extensive discovery covering the same information at an earlier stage of the litigation, in 1977–1980. Yet Alaska Foods failed to raise this issue in its earlier appeal challenging the superior court's discovery sanction—the appeal we addressed in *Hikita II*. As already noted above, the only arguments Alaska Foods raised concerning the discovery sanction in its earlier appeal were that it had submitted proper responses to Nichiro's discovery requests and that the superior court lacked authority to impose a discovery sanction because Nichiro had never filed a motion to compel discovery.[14] *Hikita II* rejected these arguments and upheld the superior court's finding of an unexcused discovery violation, declaring the sanction order deficient only because the court had not explicitly considered lesser alternatives before selecting dismissal as the appropriate sanction.[15] *Hikita II's* resolution of these points is now binding and precludes Alaska Foods from advancing a new theory suggesting that Nichiro's discovery requests were unjustified.[16]

10. *Id.* at 1175 (quoting *Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1169 (Alaska 1998)).

11. *Id.* at 1176 (quoting *Underwriters at Lloyd's London*, 846 P.2d at 119).

12. *Underwriters at Lloyd's London*, 846 P.2d at 119.

13. *See Hikita II*, 12 P.3d at 1177.

14. *Hikita II*, 12 P.3d at 1175.

15. *Id.* at 1176.

16. We reject Alaska Foods's contention that its failure to raise this argument before we decided *Hikita II* should be excused because its current attorney was new to the case in 1997, when the appeal that we decided in *Hikita II* was filed. Alaska Foods points to nothing in the record

Alaska Foods additionally claims that the superior court's refusal to find a meaningful lesser alternative sanction was based on the court's mistaken belief that Alaska Foods owed money to Nichiro under a previously entered final judgment. The procedural background for this claim is largely undisputed.

In 1984 the superior court entered a final judgment encompassing all claims between Alaska Foods and Nichiro; the judgment dismissed all claims asserted by Alaska Foods and awarded Nichiro almost $700,000 on its counterclaims. An appeal was filed challenging the dismissal of Alaska Foods's claims against Nichiro, but no appeal was filed from the award to Nichiro on its counterclaims against Alaska Foods.[17] In our 1986 decision in *Hikita v. Nichiro Gyogyo Kaisha, Ltd.* (*Hikita I*), we reversed the dismissal of some of Alaska Foods's claims, affirmed the dismissal of its other claims, and remanded the case to the superior court.[18] Later that year, the superior court dismissed Alaska Foods's reinstated claims and again entered a final judgment.[19] Alaska Foods appealed; the earlier award on Nichiro's counterclaims again remained unchallenged.[20] In our 1989 decision in *Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd.*, we reversed the 1986 order of dismissal and remanded for further proceedings.[21] That remand led to a renewed dismissal of the restored claims in 1990 and to a new final judgment entered in 1997, which, in turn, generated our decision in *Hikita II*—already discussed above.[22]

As the above-described litigation over Alaska Foods's claims proceeded, Nichiro made unsuccessful efforts to collect on the uncontested 1984 award for its counterclaims. Its efforts included repeated at-tempts to hold a judgment debtor examination of Alaska Foods's owner, Hikita, which Hikita opposed. After our 1989 decision reinstating Alaska Foods's claims, the superior court stayed Nichiro's further efforts to execute on its 1984 award pending completion of the proceedings on remand. Following the superior court's renewed dismissal of Alaska Foods's claims in 1990, a judgment debtor examination was scheduled in 1991; Hikita, who lives in Japan, failed to appear at the hearing and was eventually held in contempt. Almost a decade later, when we remanded yet again in *Hikita II*, the award on Nichiro's counterclaims remained uncollected.

In entering its findings concerning the unavailability of meaningful lesser sanctions after our remand in *Hikita II*, the superior court relied in part on Alaska Foods's conduct after the court entered its 1990 order dismissing the case as a discovery sanction. Specifically, the superior court's findings referred to Hikita's contempt citation, Nichiro's inability to collect the award on its counterclaims, and Alaska Foods's continuing failure to provide discovery after our order remanding in *Hikita II*.

Alaska Foods disputes the superior court's reliance on this post-dismissal conduct, insisting that its conduct is irrelevant to the issue of sanctions because Alaska Foods had no obligation to pay the 1984 award on Nichiro's counterclaim. Alaska Foods theorizes that the original 1984 judgment in favor of Nichiro was vacated in 1989, when we issued our decision in *Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd.*, which reversed the superior court's 1986 dismissal of Alaska Foods's claims. According to Alaska Foods, our decision in *Alaska Foods* had the effect of vacating the entire 1984 final judgment,

indicating that it raised the existence of previous discovery as a basis for opposing Nichiro's motion for discovery sanctions in the superior court before that court initially ordered dismissal as a sanction in 1990. Since the attorney who then represented Alaska Foods failed to raise the point before the superior court, Alaska Foods failed to preserve the point, even assuming that its current counsel excusably neglected to spot it before filing the 1997 appeal in *Hikita II*.

17. *See Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 713 P.2d 1197 (Alaska 1986).

18. *Id.*

19. *See Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd.*, 768 P.2d 117 (Alaska 1989).

20. *Id.*

21. *Id.*

22. *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 12 P.3d 1169, 1171–74 (Alaska 2000) (*Hikita II*).

causing its unchallenged award to Nichiro on its counterclaims to become a non-final order that Nichiro could not enforce without first obtaining a judgment under Civil Rule 54(b). Hence, Alaska Foods insists, it did no wrong by refusing to honor Nichiro's award and resisting its efforts to execute.

But Alaska Foods's theory of lost finality fails for two independent reasons. First, Alaska Foods neglected to preserve the issue below. In resisting Nichiro's efforts to conduct a judgment debtor examination, Alaska Foods urged the superior court, as a matter of discretion, to stay execution on Nichiro's judgment because Alaska Foods expected to win an even larger, offsetting judgment when it prevailed on its reinstated claims. Alaska Foods cites no point in the record before we decided *Hikita II* when it claimed that Nichiro's judgment was non-final as a matter of law and that Nichiro was therefore barred from collecting it. Had Alaska Foods advanced this theory in opposition to Nichiro's efforts to conduct the judgment debtor examination, it seems reasonable to expect Nichiro might have done precisely what Alaska Foods now accuses it of inexcusably failing to do—reduce its award to a formal judgment under Civil Rule 54(b). Given these circumstances, Alaska Foods cannot plausibly assert its freshly conceived theory to excuse its conduct.

More important, Alaska Foods's theory of finality runs counter to settled law. Nichiro cites a body of cases recognizing that "any part of a judgment not appealed from continues in effect, regardless of the reversal of other parts of the judgment."[23] As the Delaware Supreme Court recently stated the proposition, "unappealed portions of [a judgment] are deemed final, and thus 'due,' when the appeal period expires."[24] Alaska Foods cites no contrary authority and makes no attempt to distinguish—or even acknowledge—the cases advanced by Nichiro. The rule espoused by these cases is sensible and appears to be uniformly followed. Thus, even if Alaska Foods had preserved the point, its theory would lack legal merit.[25]

Alaska Foods last argues that the superior court erred in basing its findings concerning lesser alternative sanctions on conduct occurring after the sanction of dismissal had already been imposed. But in our view, the superior court could reasonably construe *Hikita II's* mandate as requiring a realistic appraisal of potentially meaningful alternative sanctions existing at the time of the remand. Moreover, our review of the superior court's findings convinces us that the court relied on post–1990 events primarily to confirm its original impression that no meaningful lesser alternatives to dismissal were available when the litigation-ending sanction was ordered. We thus find no error in the superior court's consideration of post–1990 events.[26]

## IV. CONCLUSION

Our decision in *Hikita II* authorized the superior court to reinstate its original sanctions order "if a careful consideration of lesser alternative sanctions convinces it that no sanction short of dismissal was appropriate and if the court fully explains its reasons for reaching this conclusion."[27] On remand the

**23.** *Calistro v. Spokane Valley Irr. Dist. No. 10*, 78 Wash.2d 234, 472 P.2d 539, 540 (1970) (en banc); *see also Blue Hen Lines, Inc. v. Turbitt*, 787 A.2d 74 (Del.Supr.2001); *Edmison v. Clarke*, 61 S.W.3d 302 (Mo.App.2001); *State ex rel. Horridge v. Pratt*, 563 S.W.3d 168, 170 (Mo.App. 1978); *Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 669 (Wyo.1993); *Smith v. West*, United States Court of Appeals for Veterans Claims, April 14, 1999, 1999 WL 314092; *see generally* 5 Am Jur.2d *Appellate Rev.* § 861 (1995).

**24.** *Blue Hen*, 787 A.2d at 78.

**25.** Our conclusions on Nichiro's primary points—that Nichiro's requests for discovery called for production of potentially important information concerning damages, that Alaska Foods failed to preserve its claim that this information had already been provided in prior discovery, and that the 1984 judgment on Nichiro's counterclaims remained final and enforceable—make it unnecessary to separately discuss Alaska Foods's wrap-up argument that the extreme sanction of dismissal was unwarranted because any discovery violation committed by Alaska Foods pertained only to moot/improper areas, to discovery that had previously been provided, or to issues that were merely collateral.

**26.** *Hikita II*, 12 P.3d at 1176.

**27.** *Id.* at n. 21.

superior court complied with this mandate, issuing a careful explanation of its reasons for concluding that no meaningful lesser sanctions remained available. Because Alaska Foods has failed to establish that the superior court erred in reaching this conclusion, we AFFIRM the judgment of dismissal.

FABE, Justice, not participating.