James R. STEWART, Appellant,

v.

Steve ELLIOTT, Appellee.

No. S–13286.

Supreme Court of Alaska.

Oct. 1, 2010.

James R. Stewart, pro se, Fairbanks, Appellant.

Steve L. Elliott, pro se, Fairbanks, Appellee.

1. *See* AS 28.35.030(a)(2). *See also* Alaska Stat. Ann. § 28.35.030 cmt. Effect of amendments

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

A driver was arrested on a felony driving under the influence (DUI) charge at 12:40 a.m. on the date a new DUI law took effect. Represented by counsel, he pleaded no contest to the DUI charge in return for its reduction from a felony to a misdemeanor. But years later, the superior court granted the driver post-conviction relief, concluding that his counsel had been ineffective in failing to recognize that although the new DUI law became effective at 12:01 Alaska Standard Time, Alaska was still on Daylight Saving Time at the time of arrest.

The driver brought a malpractice suit against the attorney who negotiated the plea bargain. The driver relied primarily on the decision in the post-conviction relief action to demonstrate his attorney's negligence in failing to recognize a discrepancy between Alaska Standard Time and Alaska Daylight Saving Time. But the superior court declined to give the post-conviction decision preclusive effect and ruled that the driver had not presented sufficient evidence to prove negligence.

Because the driver's attorney in the criminal action was not a party to the post-conviction relief proceeding and neither directed nor controlled that litigation, we agree with the superior court that the post-conviction relief decision did not have preclusive effect in the malpractice action. We also conclude that the record supports the superior court's decision, and we affirm it in all respects.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Arrest and plea bargain

On September 1, 2001, Alaska's DUI law changed, lowering—from 0.10 to 0.08—the blood alcohol percentage required for a driver to be considered "under the influence." [1]

(Lexis 2008) ("The 2001 Amendment, effective

On that same day James Stewart was arrested at 12:40 a.m.[2] Various tests showed his blood alcohol percentage to be between 0.080 and 0.91. These levels were under the .10 presumption in the old law but exceeded the .08 presumption in the new law. Because new laws become effective at 12:01 a.m. Alaska Standard Time, Stewart's 12:40 a.m. arrest proceeded under the new DUI law.[3]

Stewart was charged with a DUI. He faced a heightened charge because he had a prior DUI conviction and another conviction for refusing to take a blood alcohol test.[4] Attorney Steve Elliott represented Stewart and negotiated a plea bargain under which Stewart pleaded no contest in November 2001 to the reduced charge of a misdemeanor DUI, carrying a one-year sentence and a $1,000 fine. He received an additional year and 15 days due to revocation of probation in an earlier robbery conviction.

### 2. Post-conviction relief

On May 3, 2002, Stewart filed a pro se petition for post-conviction relief based on claims distinct from those in this appeal.[5] Geoffry Wildridge, the assistant public defender assigned to Stewart, reviewed the petition and found Stewart's allegations not to be colorable and further concluded there were no other meritorious claims that could be raised on Stewart's behalf. Accordingly, in October 2003—well after Stewart had served his prison term—Wildridge moved to withdraw as Stewart's counsel.

Reversing course eight days later, Wildridge supplemented Stewart's petition for post-conviction relief. Wildridge had become

aware of a recent court of appeals decision, *Fowler v. State*,[6] which contained dicta noting in passing that "the new felony DUI law took effect at 12:01 a.m., Alaska Standard Time, (that is, at 1:01 a.m. Alaska Daylight Time). . . ."[7] Distinguishing Daylight Saving Time from Alaska Standard Time has a dramatic effect on Stewart's case. According to *Fowler's* dicta, because we "fall back" an hour when switching to Alaska Standard Time, an arrest on a given day during Daylight Saving Time is actually an hour earlier on Alaska Standard Time.[8] Because Alaska was on Daylight Saving Time when Stewart was arrested, *Fowler's* dicta would place Stewart's 12:40 a.m. arrest 21 minutes before the law under which he was arrested became effective.[9] Stewart's arrest at 12:40 a.m. September 1 Daylight Saving Time would be considered to occur at 11:40 p.m. August 31 Alaska Standard Time, which places it on the day before the new law went into effect.

On this newly discovered basis for ineffective assistance of counsel, Wildridge argued on Stewart's behalf that Elliott failed to "perform at least as well as an attorney with ordinary training and skill in the criminal law" by failing to recognize the time discrepancy issue. Finding ineffective assistance of counsel, Superior Court Judge Mark I. Wood granted Stewart's supplemented petition for post-conviction relief and vacated the DUI conviction.

### B. Proceedings

After achieving post-conviction relief, Stewart filed the present professional malpractice case against Elliott, his original DUI

---

September 1, 2001, in paragraph (a)(2), substituted '0.08 percent' for '0.10 percent'. . . .").

**2.** According to Stewart, the traffic stop occurred at 12:20 a.m., 20 minutes before the arrest.

**3.** *See* AS 01.10.070(d).

**4.** *See* AS 28.35.030(n).

**5.** Stewart claimed ineffective assistance of counsel, asserting that an evidence suppression issue should have been argued by Elliott, and because he felt that his *consumption* of alcohol before the new DUI law went into effect made his arrest *ex post facto*.

**6.** 70 P.3d 1106 (Alaska App.2003).

**7.** *Id.* at 1109.

**8.** *Id.*

**9.** To be clear, Stewart's arrest did not take place on the day we switch from Daylight Saving Time; rather his arrest occurred on September 1, while Alaska is firmly on Daylight Saving Time. *See* NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY, INFORMATION ABOUT THE CURRENT DAYLIGHT SAVING TIME (DST) RULES (May 11, 2010), www.nist.gov/physlab/div847/dst.cfm (specifying that Daylight Saving Time ends at 2:00 a.m. on the first Sunday of November).

attorney. The case came before Superior Court Judge Michael A. MacDonald, who conducted a bench trial on March 4, 2008. Stewart was represented by counsel at trial. To establish a breach of the duty to use the skill, prudence, and diligence that other attorneys with training and skill in criminal law commonly possess, Stewart pointed to the post-conviction relief decision, in which Judge Wood found that Elliott had not acted "like a reasonable attorney who was skilled in the criminal law." Other than the post-conviction relief decision, Stewart presented no evidence that a reasonable lawyer should have discerned the discrepancy between the two time regimes. In contrast, there was evidence that other experienced local defense attorneys, including Geoffry Wildridge, had failed to notice or raise this issue in similar cases. Elliott also observed in his testimony that *Fowler* was decided after Stewart's plea to the DUI charges and that federal legislation appears to conflict with *Fowler's* suggestion that the two time regimes make a difference in the effective date of new legislation.[10]

Judge MacDonald was concerned that Stewart presented no expert testimony. Judge MacDonald pointed Stewart's counsel to *Zok v. Collins*,[11] which requires expert testimony in all but obvious or non-technical situations in order to establish a breach of an attorney's duty of care.[12] Despite this warning, Stewart's attorney did not call an expert and maintained that the court "must acknowledge there has been a finding [of ineffective assistance of counsel] by a competent court in this jurisdiction."

Judge MacDonald ruled that Stewart had not proved that Elliott's conduct fell below the standard of care for a reasonable attorney and entered judgment for Elliott. On the question of issue preclusion, Judge MacDonald recognized that Elliott had not been a party to the post-conviction relief proceeding and that the post-conviction relief decision was thus not binding on Elliott. On the question whether Elliott breached his duty of care, Judge MacDonald noted that three other local attorneys, all experienced defense attorneys, had also failed to notice the difference regarding time regimes. In light of the "subtle nature [of] the question of law," the fact that several attorneys had not noticed the time discrepancy, and the fact that Judge Wood's post-conviction relief decision "may be incorrect," the superior court found that Stewart did not establish that Elliott breached his duty of care.

Stewart appeals, claiming that Elliott was negligent in failing to notice the time discrepancy.

## III. STANDARD OF REVIEW

■ Because Stewart relies on the post-conviction relief decision, his appeal raises the question whether the post-conviction relief decision must be given preclusive effect in the malpractice action. This is a legal issue,[13] and we review questions of law de novo,[14] adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[15]

■ Whether a standard of care was breached is a factual determination.[16] We

10. 15 U.S.C. § 260a(a) provides: "[T]he standard time of each zone ... shall be advanced one hour and such time as so advanced shall ... be the standard time of such zone during [the period for Daylight Saving Time]...." The question whether Daylight Saving Time is actually different from Alaska Standard Time for purposes of the effective date of new legislation is not before this court, and we do not decide it.

11. 18 P.3d 39 (Alaska 2001).

12. *Id.* at 42.

13. *See State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty*, 167 P.3d 64, 68–69 (Alaska 2007) (applying independent review to issue of collateral estoppel).

14. *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008); *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1030 (Alaska 2002).

15. *Jacob*, 177 P.3d at 1184.

16. *Parnell v. Peak Oilfield Serv. Co.*, 174 P.3d 757, 766 n. 20 (Alaska 2007); *Bryson v. Banner Health Sys.*, 89 P.3d 800, 803 n. 4 (Alaska 2004) (noting that extent and scope of duty are questions of law); *see Swenson Trucking & Excavating, Inc. v. Truckweld Equip. Co.*, 604 P.2d 1113, 1118–19 (Alaska 1980) (explaining that breach of duty is question for fact finder); *see also Armstrong v. United States*, 756 F.2d 1407, 1409 (9th Cir.1985) ("[T]he determination of negligence requires the testing of particular facts against a

review factual findings under the "clearly erroneous" standard.[17] We reverse a factual finding only if we are left "with 'a definite and firm conviction on the entire record that a mistake has been made.' "[18]

## IV. DISCUSSION

Stewart argues that Elliott was negligent because he failed to distinguish between Alaska Standard Time and Daylight Saving Time and thus failed to argue that the new law had not yet gone into effect when Stewart was arrested. Citing the post-conviction relief decision, Stewart contends that Elliott's "actions fell below the reasonable range of attorneys skilled in the criminal law." We understand Stewart to argue that, contrary to the superior court's ruling, the evidence was sufficient to establish that Elliott breached his duty of care.

██ Legal malpractice is a professional negligence claim requiring the plaintiff to establish four basic elements: (1) that the defendant has a duty "to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise," (2) that the defendant breached that duty, (3) that the breach proximately caused the injury, and (4) that actual loss or damage resulted from the negligence.[19]

This case hinges on the second element, breach of duty.[20] The only evidence submitted at trial that suggested a breach of duty was Judge Wood's earlier post-conviction relief decision, which, Judge MacDonald concluded, was not binding on Elliott. Further,

Judge MacDonald observed that multiple other attorneys failed to notice the time issue. Thus Judge MacDonald found that, given the evidence presented, Stewart did not demonstrate breach. Judge MacDonald's conclusions were not erroneous.

### A. Because Elliott Was Neither A Party To Nor In Privity With A Party To The Post-Conviction Relief Decision, Issue Preclusion Does Not Bind Elliott To That Decision.

██ Stewart attempted to demonstrate negligence by relying on Judge Wood's post-conviction relief decision, in which Judge Wood concluded that Elliott's actions constituted ineffective assistance of counsel. But Judge MacDonald correctly noted that that post-conviction relief decision does not bind Elliott in this professional negligence claim.

██ We have held that post-conviction relief is a necessary prerequisite for a claim of legal malpractice in criminal cases, but we have never suggested that it takes the place of establishing the elements of negligence.[21] For an issue in a separate action to have preclusive effect under the doctrine of collateral estoppel, the party against whom the issue is being asserted must have been a party to the earlier action.[22] But if one was not a party to the earlier action, that nonparty may nonetheless be bound if in privity with the party in the earlier action.[23] In addition to the party/privity requirement, collateral estoppel requires that the judgment

---

predetermined standard of conduct. The existence and extent of a duty of care are questions of law but whether such a duty has been breached [is a question of fact] . . . .") (internal citation omitted); *Bursztajn v. United States*, 367 F.3d 485, 490 (5th Cir.2004) (distinguishing between existence of duty-legal question-and whether defendant's particular behavior breached that duty-factual question).

**17.** *Brotherton v. Brotherton*, 142 P.3d 1187, 1189 (Alaska 2006); *Nerox Power Sys., Inc. v. M–B Contracting Co.*, 54 P.3d 791, 794 (Alaska 2002).

**18.** *City of Hydaburg v. Hydaburg Coop. Ass'n*, 858 P.2d 1131, 1135 (Alaska 1993) (quoting *Parker v. N. Mixing Co.*, 756 P.2d 881, 891 n. 23 (Alaska 1988)).

**19.** *Shaw v. State, Dep't of Admin., Pub. Defender Agency,* 816 P.2d 1358, 1361 n. 5 (Alaska 1991) (citing *Linck v. Barokas & Martin,* 667 P.2d 171, 173 n. 4 (Alaska 1983)).

**20.** The superior court ruled that "Stewart failed to establish that Elliott's conduct fell below the standard of care of a reasonable attorney."

**21.** *See Shaw,* 816 P.2d at 1361 n. 5.

**22.** *See Powers v. United Servs. Auto. Ass'n,* 6 P.3d 294, 297–98 (Alaska 2000).

**23.** *State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty,* 167 P.3d 64, 72 (Alaska 2007); *Powers,* 6 P.3d at 297; *Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd.,* 768 P.2d 117, 121 (Alaska 1989).

be final and on the merits; that the precluded issue be identical in both actions; and that the issue be essential to the final judgment in the first action.[24]

■ To define privity, "[w]e have adopted the approach of the Second Restatement of Judgments . . .; it is an approach that 'relies on the various specific relationships that justify preclusion.'"[25] Privity exists where "the non-party (1) substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so; (2) agreed to be bound by the adjudication between the parties; or (3) was represented by a party in a capacity such as trustee, agent, or executor."[26] Privity "is a shorthand way of expressing assurance that the non-party has had adequate notice and opportunity to be heard, and that its rights and interests have been protected."[27] In effect, privity assures that it is fair to legally bind the non-party to the actions of the party in the earlier action.[28]

In the past we have found privity only where the relationship allowed significant and unhampered control over the earlier litigation. For example, where a family that jointly occupied land litigated a claim where all family members had the opportunity to participate in the litigation and generally agreed on its course, we held that the family members were in privity and bound by res judicata when they later tried to litigate the same claims as individuals.[29] Conversely, we held that a secondary insurance company was not in privity with a primary insurance company because neither could exert control over the other's litigation.[30] The lack of control over the other's litigation was partic-ularly relevant given that their liability coverages were slightly different, which created distinct interests on behalf of each insurer.[31] We held that co-workers injured in a single accident were not in privity when each initially pursued litigation independently; thus we declined to bind one to the other's failure to exhaust administrative remedies.[32] And we held that an individual shareholder was not in privity with a corporation—even when the shareholder had significant control of the litigation—because the shareholder's actions on behalf of the corporation did not provide the ability to represent the shareholder's individual interests.[33] Similarly, a government-employed social worker was not bound by a decision against her state agency—finding the social worker's actions inappropriate—because that employee had interests different from those of the government and had no control over the government's litigation of the claim.[34]

In the present case, Elliott submitted an affidavit for the earlier post-conviction relief proceedings, but he was not a party there; instead that case was between Stewart and the State of Alaska. And there was no privity between Elliott and the State. First, Elliott's limited participation in post-conviction relief certainly did not allow him sufficient control to establish privity. Second, there is no evidence that Elliott agreed to be bound by the post-conviction relief litigation. And finally, Elliott was not represented by the State in a capacity such as trustee, agent, or executor.[35]

We have held that merely serving as a witness in an earlier proceeding does not

---

24. *Powers*, 6 P.3d at 297–98.

25. *Id.*

26. *Id.* at 298 (citing Restatement (Second) of Judgments §§ 39–42 (1982)).

27. *Alaska Foods*, 768 P.2d at 121 (citing *Drickersen v. Drickersen*, 546 P.2d 162, 170–71 (Alaska 1976)).

28. *Donnelly v. Eklutna, Inc.*, 973 P.2d 87, 92 (Alaska 1999).

29. *Id.* at 93.

30. *Powers*, 6 P.3d at 297–98.

31. *Id.*

32. *Elliott v. Brown*, 569 P.2d 1323, 1328 (Alaska 1977).

33. *Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd.*, 768 P.2d 117, 122 (Alaska 1989).

34. *State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty*, 167 P.3d 64, 72 (Alaska 2007).

35. *See Powers*, 6 P.3d at 298 (citing Restatement (Second) of Judgments §§ 39–42 (1982)).

afford control over the litigation sufficient to establish privity,[36] and the same logic applies to providing affidavit testimony. While Elliott's affidavit may have given him some opportunity to explain his actions, it did not give him the opportunity to more broadly control the litigation. He could not decide which general strategies to pursue in the litigation, what evidence to present, how to cross-examine adverse witnesses, or whether to settle the claim. And we note that Elliott's interest in this present litigation—presumably the protection of his professional reputation and his personal assets—would not necessarily have been those of the State in the post-conviction relief proceeding. Elliott did not have a chance to vigorously defend himself or his interests at the post-conviction relief stage. Accordingly, Elliott's participation in the earlier proceeding does not give him the amount of control and discretion we require for privity, and it would not be fair for him to be bound by the post-conviction relief decision.

Our conclusion that Elliott was not in privity with the State during the post-conviction relief litigation squares with our recent decision in *State, Department of Health and Social Services, Office of Children's Services v. Doherty.*[37] There we held that a decision against a state social service agency did not bind the state-employed social worker when she was subsequently sued in her individual capacity.[38] We stated:

> The majority of courts maintain that government employees, in their individual capacities, are generally not in privity with the government and are not bound by adverse determinations against the government. This is because the interests, incentives, and immediate goals of a government employee in his or her individual capacity will most often be dissimilar from those of the government or even from those of that same employee in his or her official capacity. As a result, cases brought by or against the government or its employees in

their official capacities will not usually provide a proper forum or even the slightest opportunity for a government employee to protect his or her own personal interests. And as a matter of sound policy, this is how it should be. For when the government enters the courthouse in order to prosecute criminal conduct or protect a child in need of aid, it should not be distracted from its purpose by the personal interests of its employees.[39]

Because Elliott is not a government employee, the above rationale applies to him even more forcefully. As in *Doherty*, the government's interest was not necessarily aligned with Elliott's. The State could not chart its litigation with the benefit of Elliott's firsthand knowledge of the actions and decisions during his representation of Stewart, nor would the State necessarily be motivated by Elliott's interest in protecting both his professional reputation and private assets. Indeed, given *Doherty's* conclusion that a government worker does not sufficiently control an agency's litigation, it is untenable to conclude that a private citizen, without even an employer-employee relationship, could exert sufficient control to establish privity. Further, the policy basis for the State's independence here is just as strong as that in *Doherty:* the State's ability to concede error should not be constrained by its need to protect the interests of a third party.

Accordingly, because Elliott was neither a party to the post-conviction relief proceedings nor in privity with a party given his inability to control that litigation, collateral estoppel does not apply, and it was not error for Judge MacDonald to conclude that the post-conviction relief decision does not bind Elliott.

### B. It Was Not Clearly Erroneous For The Superior Court To Find The Evidence Insufficient To Establish Breach.

■ Stewart next claims that Judge MacDonald erred in his determination that Stew-

---

**36.** *Elliott,* 569 P.2d at 1328 ("Elliott's participation in [the earlier case] was limited to testifying as a witness. Elliott had no control over [the claim in that case]. In such circumstances he cannot be collaterally estopped.").

**37.** 167 P.3d 64.

**38.** *Id.* at 73.

**39.** *Id.* at 72 (internal footnotes omitted).

art failed to prove that Elliott breached his duty of care. Because there is adequate evidentiary support in the record for Judge MacDonald's factual findings, his ruling that Stewart did not establish a breach of the duty of care must be upheld.

Elliott testified that at the time of the plea bargain he consulted with two experienced criminal defense attorneys about his strategy for the case and that neither of them noticed an issue regarding Daylight Saving Time. Further, as the superior court noted, even Wildridge, Stewart's post-conviction relief attorney, failed to notice the issue at first and had moved to withdraw from the case due to the lack of colorable claims. This too supports the superior court's conclusion that Elliott's actions were not below the relevant standard of care. Significantly, the *Fowler* decision, which contained the dicta about Daylight Saving Time, was not issued until May 2003, a year-and-a-half after Stewart entered his plea to a misdemeanor DUI in November 2001.

Moreover, we are aware of no authority other than the *Fowler* dicta suggesting that the discrepancy between Daylight Saving Time and Alaska Standard Time has any impact on the effective time of new legislation. As Elliott submitted to the superior court, federal law suggests that such a discrepancy does not exist. According to the federal statute implementing Daylight Saving Time, "the standard time of each zone ... shall be advanced one hour and such time as so advanced shall ... be the standard time of such zone during [the period for Daylight Saving Time]."[40] The underlying question whether there is a discrepancy between Daylight Saving Time and Alaska Standard Time is not currently before this court, and we do not resolve that issue today. But the evidence, taken as a whole, supports the superior court's finding that Stewart did not present sufficient evidence to show that a reasonable attorney would have raised the time discrepancy as an issue in the DUI prosecution. Because the record supports

Judge MacDonald's ruling, we are not left with the conviction that a mistake has been made.[41]

## V. CONCLUSION

Because Elliott was not a party to, nor in privity with a party to, the earlier post-conviction relief proceeding, issue preclusion does not bind him to the conclusions of that proceeding. Because adequate evidence supports Judge MacDonald's ruling that Stewart failed to prove a breach of an attorney's standard of care, we AFFIRM.

---

40. 15 U.S.C. § 260a(a) (2007).

41. *City of Hydaburg v. Hydaburg Coop. Ass'n*, 858 P.2d 1131, 1135 (Alaska 1993) (quoting *Parker v. N. Mixing Co.*, 756 P.2d 881, 891 n. 23 (Alaska 1988)) (We reverse under the clearly erroneous standard only if we are left "with 'a definite and firm conviction on the entire record that a mistake has been made.' ").